**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**WAYCROSS DIVISION**

| | |
|---|---|
| DR. MAHENDRA AMIN, M.D., | |
| Plaintiff, | |
| v. | Case No.: 5:24-cv-00022-LGW-BWC |
| RACHAEL O'BRIEN, MORBID: A TRUE CRIME PODCAST LLC d/b/a MORBID NETWORK, WONDERY, LLC, and AMAZON.COM, INC., | |
| Defendants. | |

**DEFENDANTS WONDERY, LLC'S AND AMAZON.COM, INC.'S**
**F.R.C.P. 12(b)(6) MOTION TO DISMISS**

In this action, Plaintiff Dr. Mahendra Amin ("Plaintiff") claims he was defamed by one episode of a podcast (the "Podcast Episode") produced by Defendants Rachel O'Brien ("Ms. O'Brien") and Morbid: A True Crime Podcast LLC d/b/a Morbid Network ("Morbid"). Plaintiff alleges that Ms. O'Brien, potentially aided by Morbid, was responsible for developing the content at issue. Morbid then distributed the Podcast Episode online, through defendant Wondery LLC ("Wondery"), including on Wondery's website. Although Plaintiff alleges that Morbid contracted with both Wondery and Amazon.com, Inc. ("Amazon") to distribute the Podcast Episode, Amazon's only alleged role is that it owns Wondery.

Neither Wondery nor Amazon belongs in this case. Wondery and Amazon did not develop any of the content of the Podcast Episode, and they were not aware

of its content.  At most, Wondery and Amazon provided the website and computer service through which the Podcast Episode was distributed.  They cannot be held liable for this conduct under either federal or Georgia law for at least three independent reasons.

First, the federal Communications Decency Act ("CDA"), 47 U.S.C. § 230 ("Section 230") provides Wondery (and its owner Amazon) with ***absolute immunity*** in this case.  Section 230 was enacted to promote the free exchange of electronic information by protecting website operators and other computer service providers from legal liability for  third-party content.  Under Section 230, Wondery, Amazon, and other companies that distribute content provided by other individuals and businesses are immune from liability based on that content.  Here, Plaintiff seeks to hold Wondery and Amazon liable for the content provided by Ms. O'Brien and Morbid – which he cannot do under Section 230.  As such, Plaintiff's claim against Wondery and Amazon must be dismissed.

Second, the statements Plaintiff alleges defamed him are subject to Georgia's "public interest" privilege because they were made in connection with an issue of public interest or concern, and Wondery's alleged distribution of the statements were acts in furtherance of their and the public's constitutional rights of free speech.  Under Georgia law, Plaintiff must allege facts to plausibly establish that Wondery and Amazon each acted with actual malice – meaning that they subjectively knew the statements at issue were false or actually entertained serious doubts as to their veracity.  However, Wondery and Amazon were not even aware of the contents of the Podcast Episode, and certainly did not have subjective knowledge of falsity or

actual doubts as to its truth.  Plaintiff does not and cannot in good faith allege that they did, and for this reason as well, Plaintiff's claim against Wondery and Amazon fails as a matter of law.

Third, with respect to Amazon, Plaintiff alleges only that Amazon owns Wondery.  Amazon's mere ownership of Wondery is an insufficient basis for liability against Amazon.

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that Ms. O'Brien and potentially Morbid are responsible for the content of the allegedly defamatory Podcast Episode and its summary description at issue in this litigation.  Plaintiff alleges that Ms. O'Brien hosts the Seven Deadly Sinners series (Compl., ¶ 11) and that Ms. O'Brien was responsible for all the statements in the Podcast Episode, including its summary description[1] (*Id.*, ¶¶ 100,

---

[1]   The summary description of the Podcast Episode that appears on Wondery's website is simply an excerpt of the Podcast Episode itself.  *Compare* Ex. A, hereto, at timestamp 1:06 to 1:58 *with* Compl., ¶ 100, 101.  *See also*, Ex. B, hereto, ¶ 2, authenticating Exhibit A.  The Eleventh Circuit has adopted the "incorporation by reference" doctrine through which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment, so long as the attached document is central to the plaintiff's claims and its authenticity is not disputed.  *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Davis v. Self*, 547 F. App'x 927, 929 (11th Cir. 2013) (same).  Here, Plaintiff incorporated large portions of alleged text of the Podcast Episode throughout his Complaint, and it is central to his claims since it is the material he alleges is defamatory.  Compl., ¶¶ 103–113, 137, 142.  The transcript of the Podcast Episode cannot reasonably be disputed.  *See* Ex. B, ¶ 2.  Therefore, the Court can consider the transcript of the Podcast Episode, attached hereto as Exhibit A, in ruling on this Motion without converting it into a motion for summary judgment.

101, 103–107, 109–113), except for portions of the Episode incorporating quotes of third-party content. *Id.*, ¶ 108.

Plaintiff further alleges that Morbid partners with podcast creators to build a family of podcast series, which includes Ms. O'Brien's Seven Deadly Sinners series. Compl., ¶ 55. "Seven Deadly Sinners is identified as part of the Morbid Network." *Id.*, ¶¶ 56–58. Morbid also allegedly engaged in " substantial cross-promotion" of Ms. O'Brien and her content, including having her appear as a guest on other Morbid podcasts. *Id.*, ¶¶ 59–62.

However, ***Wondery and Amazon had no role*** in the development of the Podcast Episode or its content. Rather, Plaintiff alleges that "Wondery and Amazon are the online home of the Morbid Network and Seven Deadly Sinners." Compl., ¶ 76. Specifically, Wondery is an online platform and website, through which creators and other podcast producers or networks can distribute their podcasts, and the public can access that content. Compl., ¶ 64. Wondery and Morbid allegedly had a distribution relationship under which Wondery was granted the exclusive right to distribute and monetize Morbid's podcasts through Wondery's platform and website (*id.*, ¶ 73), although Wondery's exclusive distribution rights allegedly lasted for only one week. *Id.*, ¶ 98. Wondery's website hosts Morbid's "official" webpage and Morbid's webpage for the Seven Deadly Sinners podcast series. *Id.*, ¶¶ 74, 76. Notably, Wondery's alleged activities do not involve developing or even reviewing the content provided by partners such as Morbid, including the content at issue in this action. *Ibid.*

Although Amazon is lumped together with Wondery in certain allegations, Plaintiff does not allege that Amazon played any role in distributing Morbid's podcasts, other than owning Wondery.  Amazon merely purchased Wondery, and Wondery allegedly operates from offices in Los Angeles owned by Amazon. Compl., ¶¶ 68–72.

In sum, Wondery and Amazon did not have, and are not alleged to have had, any role in developing or reviewing the Podcast Episode, or any other content relating thereto.

## ARGUMENT

### I.   Legal Standard

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This requires more than a "sheer possibility," "naked assertion," "labels and conclusions," or "a formulaic recitation of the elements." *Id.*  Rather, the complaint must allege a factual basis for each element of each cause of action.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 687 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

II.     **The CDA Requires Dismissal of Plaintiff's Claim Against Wondery and Amazon**

The CDA immunizes online platforms like Wondery from defamation claims based on content provided by third parties like Ms. O'Brien and Morbid. Accordingly, Plaintiff's claim against Wondery (and its owner, Amazon) must be dismissed.

A.     **The CDA Provides Immunity from State Tort Claims including Defamation Claims**

Section 230 provides, in pertinent part, that: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."   47 U.S.C. § 230(c)(1).[2]

As the Fourth Circuit explained in one of the leading cases interpreting Section 230:

> By its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.  Specifically, § 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role.

---

[2] "The term 'interactive computer service' means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions."  47 U.S.C. § 230(f)(2).  "The term 'information content provider' means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."  47 U.S.C. § 230(f)(3).

*Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997); *accord McCall v. Zotos*, 2023 WL 3946827, at *2 (11th Cir. June 12, 2023) ("Generally speaking, § 230 'precludes courts from entertaining claims that would place a computer service provider in a publisher's role.'"); *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) (the CDA establishes "broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party'"); *Hopkins v. Doe*, 2011 WL 5921446, at *1 (N.D. Ga. Nov. 28, 2011) (defamation claim against discussion board website preempted by CDA immunity). "Through this provision, Congress granted most Internet services immunity from liability for publishing false or defamatory material so long as the information was provided by another party." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003).[3]

As a matter of well-established federal law, the CDA "mandates dismissal if (i) [the defendant] is a 'provider or user of an interactive computer service,' (ii) the information for which [the plaintiff] seeks to hold [the defendant] liable was 'information provided by another information content provider,' and (iii) the complaint seeks to hold [the defendant] liable as the 'publisher or speaker' of that information." *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014). Dismissal based on CDA immunity is appropriate at the pleadings stage pursuant to a 12(b)(6) motion. *See McCall*, 2023 WL 3946827, at *1.

---

[3] "Section 230(c)(1) . . . does not contain a good faith requirement." *Al-Ahmed v. Twitter, Inc.*, 648 F. Supp. 3d 1140, 1161 (N.D. Cal. 2023).

**B.    The CDA's Immunity Applies to Wondery and Amazon**

All three elements of the above test are satisfied as to Wondery and Amazon. Wondery provides an interactive computer service (a "podcast-hosting platform" (Compl. ¶ 177)), Ms. O'Brien and Morbid provided her podcast to that service, and now Plaintiff is seeking to hold Wondery liable as the publisher of Ms. O'Brien's podcast.  Section 230 does not allow for liability in this circumstance.

*Peschmann v. BlogTalkRadio, Inc.*, 2017 WL 11696659, at \*2 (S.D.N.Y. Sept. 22, 2017), is instructive.   There, in addition to suing the parties actually responsible for an allegedly defamatory audio program (the "H&H Report"), the plaintiff also sued BlogTalkRadio ("BTR"), which "operates a web-based platform through which radio talk shows and podcast programs . . . publish and distribute audio content online." *Id.*  The plaintiff also sued BTR's parent company, Cinchcast. *Id.*

In granting the defendants' motion to dismiss based on CDA immunity, the court explained:

> The gravamen of Plaintiff's claims against the Corporate Defendants is not that they played a role in creating the February 10, 2015 segment of the H&H Report.   The Amended Complaint contains no such allegations.  Instead, Plaintiff's theory is that the Corporate Defendants published the offending content by hosting the website on which the H&H Report is made available, and violated Plaintiff's rights by refusing her requests to remove this content from their website.   As explained by the Second Circuit in *Ricci* [*v. Teamsters Union Loc. 456*, 781 F.3d 25 (2d Cir. 2015)], however, the CDA forecloses liability against providers of "interactive computer services" on this basis.

*Id.* at *13; *see also id.* (explaining that providers of a web-based platform through which an audio program is made accessible "are providers of 'interactive computer services' within the meaning of the CDA").  The same reasoning applies here.

Though particularly on point, *Peschmann* is by no means alone in its reasoning.  For example, this Court, in *Swain v. Weinstein*, 2020 WL 8575175, at *1–2 (S.D. Ga. Oct. 23, 2020), *report and recommendation adopted*, 2021 WL 620963 (S.D. Ga. Feb. 17, 2021) also held Section 230 barred liability.  The plaintiff in *Swain* argued the operator of a website was liable for refusing to remove an allegedly defamatory thread of comments.  In finding that Section 230 barred liability, this Court explained that the defendant, Kiwi Farms, "is an online forum and plaintiff makes no suggestion that the posts in question were created by the website's operators.  As such, the Communications Decency Act (CDA) shields Kiwi Farms from liability."  *Id.*

Similarly, in *McCall v. Zotos*, 2023 WL 3946827, at *3 (11th Cir. June 12, 2023), the Eleventh Circuit affirmed a Section 230 dismissal of a defamation claim against Amazon based on its decision not to remove an online customer review.  The court held this was "exactly the kind of claim that is immunized by the CDA—one that treats Amazon as the publisher of that information."  *Id.*  It did not matter that Amazon "set rules governing customer feedback"; what mattered was that there were "no allegations that suggest Amazon helped develop the allegedly defamatory review."  *Id.*  "'Lawsuits seeking to hold a service provider like Amazon liable for its exercise of a publisher's traditional editorial functions—such as deciding whether

to publish, withdraw, postpone, or alter content—are barred.'" *Id.* (original brackets omitted).

Plaintiff may argue that he can avoid this generally applicable law by alleging nuances in Wondery's general business model.  These include Plaintiff's allegations that Wondery (i) has an application process for those who wish to share podcasts on Wondery's interactive computer service, (ii) enters into contracts with podcast providers, and (iii) "touts its 'specialized marketing capabilities,' 'in-house monetization solutions,' and 'strong relationships with key distribution partners' as benefits to creators or other podcast networks considering paying for its services." Compl., ¶¶ 66, 67, 73, 77, 78.

None of these allegations matter.  Section 230 does not include exemptions for when interactive computer services make choices about what content to permit, enter into agreements with content providers, or market their products.  Rather, the law is clear: "so long as a third party willingly provides the essential published content*, the interactive service provider receives full immunity ***regardless of the specific editing or selection process***." *Carafano*, 339 F.3d at 1124 (emphasis added).  *See also Dowbenko v. Google Inc.*, 582 F. App'x 801, 805 (11th Cir. 2014) ("Nor does the allegation that Google manipulated its search results to prominently feature the article at issue change this result."); *In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 625 F. Supp. 3d 971, 994 (N.D. Cal. 2022) ("Allegations that the Platforms are liable for actions that rely on algorithms to 'amplify and direct users to content,' . . . cannot withstand section 230's grant of immunity.")

Simply put, Plaintiff cannot avoid "[t]he operative question": namely, "does the plaintiff seek to hold a website liable for its **own** bad conduct or for the bad conduct of another?" *In re Apple Inc. App Store*, 625 F. Supp. 3d at 993.  Here, it is clear that Plaintiff seeks to hold Wondery and Amazon liable for allegedly defamatory content **provided by Ms. O'Brien and/or Morbid**.  This he cannot do.

### C.   Dismissal Also Advances Congress' Policy Goals for the CDA.

Recognizing that Wondery is entitled to Section 230's immunity comports with, and advances, Congress's policy goals in passing the CDA.  Congress found that "[t]he Internet and other interactive computer services offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity."   47 U.S.C. § 230(a)(3).   However, "Congress recognized the threat that tort-based lawsuits pose to freedom of speech in the new and burgeoning Internet medium." *Zeran*, 129 F.3d at 330.  "Faced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted.  Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect." *Id.* at 331; *see also McCall*, 2023 WL 3946827, at *2.

Here, podcasters need interactive computer services to make their speech accessible to the public.  Congress determined that if platforms like Wondery faced liability for that speech, they would not be able to make themselves a forum for the exchange of ideas.  "None of this means, of course, that the original culpable party who posts defamatory messages would escape accountability. . . .  Congress made a

-11-

policy choice, however, not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages." *Zeran*, 129 F.3d at 330–31.

Accordingly, Plaintiff's Complaint should be dismissed as to Wondery and Wondery's owner, Amazon, and the dismissal should be with prejudice given that Plaintiff cannot amend his complaint to cure this fatal defect. *See Hopkins v. Doe*, 2011 WL 5921446, at *1 (N.D. Ga. Nov. 28, 2011) (concluding that amendment would be futile where claims dismissed under Section 230 were "based upon [the defendant's] failure to police third-party conduct on its website").

## III.   The Complaint Must be Dismissed because Plaintiff Does Not and Cannot Allege Actual Malice as to Wondery or Amazon

The Complaint should be dismissed because, as explained above, the CDA provides complete immunity to Wondery and Amazon.   No further inquiry is necessary.   Nevertheless, the Complaint independently fails under Georgia law because Plaintiff cannot allege actual malice as to Wondery or Amazon.

### A.   Georgia's Public Interest Privilege Applies, Requiring Plaintiff to Allege that Wondery and Amazon Acted with Actual Malice

Under Georgia law, "[t]o make out a prima facie case of defamation, a plaintiff must show: (1) a false and defamatory statement concerning the plaintiff; (2) an ***unprivileged*** communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement regardless of any showing of special harm." *Goia v. CitiFinancial Auto*, 499 F. App'x 930, 937 (11th Cir. 2012) (emphasis added), citing *Mathis v. Cannon*,

276 Ga. 16, 20–21 (2002).  If statements are privileged, they cannot be the basis of a defamation claim.

Among other privileges, Georgia law provides a privilege for statements made in connection with issues of public interest.  Specifically, Georgia's "public interest privilege" protects "[s]tatements made in good faith as part of an act in furtherance of the . . . entity's right of . . . free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern as defined in [O.C.G.A. § 9-11-11.1(c)]."  O.C.G.A. § 51-5-7(4).  In turn, O.C.G.A. § 9-11-11.1(c)(3)-(4) defines an act in furtherance of free speech to include "[(3)] [a]ny written or oral statement . . . made in . . . a public forum in connection with an issue of public concern"; or "[(4)] [a]ny other conduct in furtherance of the exercise of the constitutional right of . . . free speech in connection with a public issue or an issue of public concern."

The statements at issue in this action were in connection with an issue of public concern for purposes of both Sections 9-11-11.1(c)(3) and (4).  O.C.G.A. § 9-11-11.1(c)(3), (4).   The statements concern and discuss in depth allegations of mistreatment of detainees in the Irwin County ICE facility (Compl., ¶¶ 100, 101, 103–113), which implicates hundreds (if not thousands) of women at that facility, as well as the standard of care for detainees nation-wide.   Additionally, "the mistreatment of detainees more broadly is 'an ongoing controversy, dispute, or discussion.'"  *Amin v. NBCUniversal Media, LLC*, No. 5:21-CV-56, 2022 WL 16964770, *7 (S.D. Ga. Nov. 16, 2022) (holding that similar statements by NBCUniversal were in made connection with an issue of public concern); *Wilkes &*

*McHugh, P.A. v. LTC Consulting, L.P.*, 306 Ga. 252, 263 (2019) ("[T]he alleged existence of serious injuries and deaths at local nursing homes…certainly qualifies as a public issue or an issue of public concern."); *Hindu Temple & Cmty. Ctr. of High Desert, Inc. v. Raghunathan*, 311 Ga. App. 109, 114 (2011) ("the perceived (and substantially documented) victimization of individuals throughout the country constitutes 'an issue of public interest or concern'").

The statements at issue are also "written or oral statement[s] . . . made in . . . a public forum in connection with an issue of public concern." O.C.G.A. § 9-11-11.1(c)(3). The statements in the Podcast Episode were allegedly made on the internet (through the publicly-accessible Wondery website). Compl, ¶ 76. The internet is a public forum, as are publicly-accessible websites.[4] *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006) ("Web sites accessible to the public . . . are 'public forums'"); *Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc*., 129 Cal. App. 4th 1228, 1247 (2005) (statements on defendants' website were made in a public forum); *Vogel v. Felice*, 127 Cal. App. 4th 1006, 1015 (2005) (defendant's website constituted a "writing made in . . . a public forum."); *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 897 (2004) (statements posted on a website are made in a public forum); *Smithey v. McDuffie*, 4:08cv207, 2010 WL 11607304, at *8 (S.D. Ga., Jan. 20, 2010) (speech on an "internet board" was speech in a public forum).

---

[4] Georgia "revised OCGA § 9-11-11.1 to substantially track California's [law]" and therefore, courts "may look to California case law . . . for guidance." *Wilkes & McHugh, P.A.*, 306 Ga. at 257–58.

Thus, the statements were made in a public forum, in connection with an issue of public concern, and therefore are within the scope of Section 9-11-11.1(c)(3).

Alternatively, the statements at issue are within the scope of Section 9-11-11.1(c)(4) because they constitute "conduct in furtherance of the exercise of the constitutional right of . . . free speech." O.C.G.A. § 9-11-11.1(c)(4). "'An act is in furtherance of the right of free speech if the act helps to advance that right or assists in the exercise of that right.'" *Collier v. Harris*, 240 Cal.App.4th 41, 51 (2015).

Here, Wondery (and Amazon) are accused of distributing content on an issue of public concern. The act of distributing content is in furtherance of, and protected by, the First Amendment. *See, e.g., Winters v. New York*, 333 U.S. 507, 509 (1948) ("The principle of a free press covers distribution as well as publication."); *Ex parte Jackson*, 96 U.S. 727, 733 (1877) ("Liberty of circulating is as essential to that freedom as liberty of publishing; indeed, without the circulation, the publication would be of little value."). For example, in *Smith v. California*, 361 U.S. 147, 152–53 (1959), the Supreme Court struck down an ordinance that imposed liability on a bookseller for possession of an obscene book regardless of whether the bookseller had knowledge of the book's contents, because such liability would cause booksellers—distributors—to self-censor in violation of the First Amendment rights of the distributors and the public:

> Every bookseller would be placed under an obligation to make himself aware of the contents of every book in his shop. It would be altogether unreasonable to demand so near an approach to omniscience. And the bookseller's burden would become the public's burden, for by restricting him the public's access to reading matter would be restricted. If the contents of bookshops and periodical stands were restricted to

> material of which their proprietors had made an inspection, they might
> be depleted indeed.

*Id.* at 153 (internal quotations, citation and footnote omitted).  Similarly, Wondery's and Amazon's alleged distribution of the material at issue is also an act in furtherance of their rights and the public's rights of free speech.

Finally, statements are made in "good faith" unless they are made with Constitutional (*New York Times*) "actual malice."  Thus, "Georgia law recognizes two types of privilege: absolute and conditional. Where a conditional privilege applies, the privilege protects the speaker from liability for the communication unless the communication is made with actual malice."  *Amin*, 2022 WL 16964770, *8–9 (explaining that "Georgia applies the federal *New York Times* actual malice standard to cases of conditional privilege").

Accordingly, Wondery's and Amazon's alleged distribution of the statements at issue was privileged, unless Plaintiff states sufficient facts to plausibly allege that Wondery and Amazon acted with actual malice.

## B.   Plaintiff Does Not and Cannot Allege Actual Malice as to Wondery or Amazon

To establish actual malice, Plaintiff "must allege facts sufficient to give rise to a reasonable inference that the false statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'"  *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (emphasis added, citation omitted); *Turner v. Well*s, 879 F.3d 1254, 1273 (11th Cir. 2018) (affirming dismissal for failure to plead actual malice where "most of [plaintiff's] allegations are set forth

in a conclusory manner" and plaintiff did not allege facts demonstrating actual malice).

"The test is not an objective one and the beliefs or actions of a reasonable person are irrelevant.  Rather, we ask whether the defendant, instead of acting in good faith, *actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false*."  *Michel*, 816 F.3d at 702–03 (citation omitted, emphasis added).  "Even an 'extreme departure from professional [publishing] standards' does not necessarily rise to the level of actual malice."  *Jacoby v. CNN, Inc.*, 2021 WL 5858569, *4 (11th Cir. Dec. 10, 2021) (citation omitted).  *See also Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc*., 6 F.4th 1247, 1252 (11th Cir. 2021) (affirming dismissal where plaintiff "did not sufficiently plead facts that give rise to a reasonable inference that [defendant] 'actually entertained serious doubts as to the veracity' of its hate group definition.");  *Amin*, 2022 WL 16964770, *9 (examining whether the plaintiff had alleged sufficient facts to plausibly state that defendants had actual malice).

Here, Plaintiff falls far short of meeting his burden to show that Wondery and Amazon acted with actual malice.  Plaintiff merely asserts, in a conclusory manner, that "Defendants" (collectively) acted with actual malice because the Podcast Episode (i) was allegedly published "without conducting a reasonable investigation" (Compl., ¶ 159); (ii) allegedly contained statements that were so inherently improbable or outrageous on their face as to raise serious doubts about their truth (*id*., ¶¶ 155, 156); and (iii) allegedly "contained statements that contradicted known

facts" and incompletely reports on the contents of the Senate Report (*id.*, ¶¶ 158, 162). These allegations are insufficient for multiple reasons.

*First*, actual malice must be alleged as to **each** defendant separately; group pleading of actual malice does not suffice. *See, e.g., Cantrell v. Forest City Publ'g Co.*, 419 U.S. 245, 252–54 (1974) (analyzing actual malice with respect to each defendant); *Secrist v. Harkin*, 874 F.2d 1244, 1247–48 (8th Cir. 1989) (plaintiff "was required to show by clear and convincing evidence that each defendant acted with actual malice in publishing the statements"); *Hoffman v. Washington Post Co.*, 433 F. Supp. 600, 605 (D.D.C. 1977), *aff'd mem.*, 578 F.2d 442 (D.C. Cir. 1978).[5] However, Plaintiff provides no factual allegations as to Wondery or Amazon individually. His Complaint fails to adequately plead actual malice for this reason alone.[6]

*Second*, Plaintiff does not allege any facts that Wondery or Amazon had knowledge of the contents of the Podcast Episode. Unless they were actually aware of what the Podcast Episode said, they cannot have entertained subjective doubts about the truth of the material—and, thus, they could not have had actual malice. As explained, the standard is subjective. *Michel*, 816 F.3d at 702–03; *Turner*, 879 F.3d at 1273. Accordingly, Plaintiff must allege **specific facts** to plausibly support a

---

[5] This makes sense given the defendant must have had subjective knowledge of falsity or reckless disregard for the truth.

[6] Indeed, with respect to each of the organizational defendants, "the state of mind required for actual malice would have to be brought home to the persons in the [defendant's] organization having responsibility for the publication of the [statement]." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964).

conclusion that Wondery and Amazon were each ***actually aware of the contents*** of the Podcast Episode, and that they ***knew it was false or subjectively entertained serious doubts as to its truth***.

Plaintiff has not done this, and his factual allegations show the opposite. As Plaintiff alleges, Ms. O'Brien (and perhaps Morbid) were responsible for the content of the material. Compl., ¶¶ 11, 103–107, 109–113. He further alleges that the series Seven Deadly Sinners was one of Morbid's 13 podcast series which Morbid developed by partnering with content creators, including Ms. O'Brien. *Id*., ¶¶ 55–57. Plaintiff also alleges that Morbid worked to promote Ms. O'Brien, including on other Morbid podcasts. *Id*., ¶¶ 59–62.

By contrast, there is no allegation that Wondery or Amazon had ***any*** role with respect to the Podcast Episode that would have made them aware of its contents. Rather, Plaintiff merely alleges that Morbid had a contractual relationship with Wondery ("and Amazon") to distribute Morbid's podcast series on its platform and website. Compl., ¶ 67. Plaintiff further alleges that Wondery held itself out as having "specialized marketing capabilities," "in-house monetization solutions," and "strong relationships with key distribution partners" (*id.*. ¶ 66), and that Wondery allegedly had exclusive rights to certain "ad sales, merchandising, and distribution" with respect to Morbid's podcasts. *Id*., ¶ 73.

None of these things relates to producing or developing the content of any podcast. As Plaintiff alleges, Wondery distributes an exceptionally large amount of content, and indeed, "is one of the largest podcast networks in the country and is consistently ranked in the top 3 by industry analysts." *Id*., ¶ 64. He also explains

that the Seven Deadly Sinners series alone had over 200 episodes. *Id*., ¶ 48. Thus, Plaintiff alleges that Wondery is a distributor of a very large amount of content, and had no role or responsibility for developing or reviewing Morbid or Seven Deadly Sinners content, let alone the specific Podcast Episode at issue. Furthermore, Amazon is not alleged to have had any specific role in distributing the Podcast Episode other than owning Wondery. *Id*., ¶¶ 68–72. Plaintiff's allegations fail to establish that Wondery or Amazon knew the contents of the Podcast Episode, let alone that they developed and distributed it with actual malice.

*Third*, Plaintiff cannot claim that Wondery or Amazon had any obligation to make themselves aware of the contents of the Podcast Episode, or that their failure to do so amounted to actual malice. As explained above, imposing a requirement on a distributor such as Wondery (or its owner, Amazon) to review the contents of the third-party material they distribute, lest they be held liable for defamation, would violate the First Amendment. Such requirement would place a tremendous burden on distributors, whether they be booksellers or online service providers such as Wondery (or Amazon), to review and examine the contents of all material they distribute. *Smith*, 361 U.S. at 152–53. That burden, "would become the public's burden, for by restricting [the bookseller] the public's access to reading matter would be restricted." *Id*. Thus, there was no requirement for Wondery—much less its owner, Amazon—to make themselves aware of the contents of the material at issue.

In short, Plaintiff's allegations do not come close to establishing that Wondery or Amazon acted with actual malice in connection with the Podcast Episode.[7]  And Plaintiff cannot amend his complaint to cure these defects because his allegations make clear he has no good faith basis to allege that Wondery or Amazon had any role in developing the content.  Accordingly, Plaintiff's claim should be dismissed as to Wondery and Amazon without leave to amend.

## IV.   Amazon Was Not Even a Distributor of the Content and Must Be Dismissed for this Reason as Well

Plaintiff does not allege any specific facts to indicate that Amazon had any role whatsoever with respect to the Podcast Episode.  At most, he alleges that Amazon owns Wondery, and that Wondery operates out of some of the "hundreds of thousands of square feet" of office space owned or leased by Amazon.  Compl., ¶¶ 68–72.  These allegations are woefully inadequate to state any claim under Georgia law against Amazon.  For example, one of the elements of a defamation claim is "an unprivileged communication to a third party."  *Goia*, 499 F. App'x at 937.  However, Plaintiff has not alleged facts indicating that Amazon distributed or communicated any statement to a third party.[8]  Accordingly, Plaintiff fails to state a claim against Amazon for this additional reason.

---

[7]  Indeed, Plaintiff's allegations regarding actual malice (Compl., ¶¶ 153–162) are simply irrelevant since he has not established that Wondery or Amazon had any knowledge of the Podcast Episode's contents or any duty to know its contents.

[8]  As explained above, Plaintiff also does not sufficiently plead any statements were ***unprivileged*** and has not alleged the level of fault required in this case (actual malice).

## **CONCLUSION**

For the foregoing reasons, Wondery and Amazon respectfully request that the Court dismiss the Complaint in its entirety, without leave to amend.

Dated: May 31, 2024

| | |
|---|---|
| */s/ Nicholas H. Howell* | */s/ Dylan J. Price* |
| Nicholas H. Howell | Dylan J. Price (*pro hac vice submitted*) |
| Georgia Bar No. 741064 | dprice@sheppardmullin.com |
| Jonathan M. Kaufman | Tenaya Rodewald (*pro hac vice submitted*)) |
| Georgia Bar No. 834982 | trodewald@sheppardmullin.com |
| KING & SPALDING LLP | Matthew G. Halgren (*pro hac vice submitted*) |
| 1180 Peachtree Street, N.E., Suite 1600 | mhalgren@sheppardmullin.com |
| Atlanta, Georgia 30309-3521 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP |
| T: (404) 572-4600 | A Limited Liability Partnership |
| F: (404) 572-5139 | Including Professional Corporations |
| nhowell@kslaw.com | 333 South Hope Street, 43rd Floor |
| jkaufman@kslaw.com | Los Angeles, California 90071-1422 |
| | 213.620.1780 |
| | |
| | *Attorneys for DEFENDANTS WONDERY, LLC AND AMAZON.COM, INC.* |

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 31st day of May, 2024, a true and correct copy of the foregoing was served upon all counsel of record via the Court's electronic filing system.

*/s/ Nicholas H. Howell*
Nicholas H. Howell