IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

|  |  |
|---|---|
| DR. MAHENDRA AMIN, M.D.,<br><br>    Plaintiff,<br><br>v.<br><br>RACHAEL O'BRIEN, MORBID: A TRUE CRIME PODCAST LLC d/b/a MORBID NETWORK, WONDERY, LLC, and AMAZON.COM, INC.,<br><br>    Defendants. | Case No.: 5:24-cv-00022-LGW-BWC |

**PLAINTIFF'S MOTION TO LEAVE TO FILE CORRECTED BRIEFS**

NOW COMES, Plaintiff Dr. Mahendra Amin, M.D., and, pursuant to the Court's inherent discretion to control the matters before it, hereby files this Motion for Leave to File Corrected Briefs as follows:

1.  Defendant Rachael O'Brien's August 6, 2024, Reply in Support of her Motion to Dismiss identified an erroneous citation in Dr. Amin's prior briefing. (ECF Doc. No. 56 pp. 3-4.) Specifically, Dr. Amin mistakenly attributed two quotations from the case Continental Aerospace Techs., Inc. v. I.T.F. Grp. Corp., 691 F. Supp. 3d 1358 (S.D. Ala. 2023)[1] to the case MSP Recovery Claims, Series LLC v. Caring Voice Coal., Inc., No. 21-21317-CIV, 2024 WL 1326402 (S.D. Fla. Mar. 22, 2024).

2.  This error occurs on page 7 of Dr. Amin's July 5, 2024, Response to Defendant Morbid: A True Crime Podcast LLC's Motion to Dismiss for Lack of Personal Jurisdiction, ECF Doc. No. 42. The error also occurs on page 7 of Dr. Amin's July 23, 2024, Response to

---

[1] The Cont'l Aerospace opinion, with the quotations at issue highlighted, is attached hereto as Tab A.

1

Defendant Rachael O'Brien's Motion to Dismiss, ECF Doc. No. 48.  The misattributed quotations are recited on page 11 of the brief.

3. To be clear, this misattribution is nothing more.  As shown in Tab A, the quotations at issue are accurately taken from Continental Aerospace, but the citations used an "Id." that was inadvertently not updated to a short cite when an intervening cite to MSP was placed between the quotations at issue and the brief's prior citation to Continental Aerospace.

4. Regardless, Dr. Amin recognizes this misattribution; he apologizes and respectfully requests permission to file corrected versions of the affected briefing.

5. The proposed corrected version of Dr. Amin's July 5, 2024, Response to Defendant Morbid: A True Crime Podcast LLC's Motion to Dismiss for Lack of Personal Jurisdiction is attached hereto as Exhibit 1.  The undersigned represents that Exhibit 1 is identical to the document filed on July 5, 2024, except for a corrected citation on page 7 of the brief.

6. The proposed corrected version of Dr. Amin's July 23, 2024, Response to Defendant Rachael O'Brien's Motion to Dismiss is attached hereto as Exhibit 2.  The undersigned represents that Exhibit 2 is identical to the document filed on July 23, 2024, except for corrected citations on pages 7 and 11 of the brief.

7. "District courts have 'unquestionable' authority to control their own dockets," which "includes 'broad discretion in deciding how best to manage the cases before them.'" Smith v. Psychiatric Sols., Inc., 750 F.3d 1253, 1262 (11th Cir. 2014).  These "inherent powers" are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  Dietz v. Bouldin., 579 U.S. 40, 45 (2016) (citing Link v. Wabash R. Co., 370 U.S. 626, 630–631 (1962)).

8. Permitting Dr. Amin to file corrected briefing is a proper exercise of that discretion because it permits the parties to proceed with a clear record and alleviates any risk of confusion. It would not delay this case or prejudice Defendants Morbid or O'Brien because the corrected briefs do not change the substance of Dr. Amin's argument in any way. Instead, they merely correct an inadvertent citation error. Further, it is not in violation of any statute or procedural rule. It is therefore well within the scope of the Court's discretion. <u>Dietz</u>, 579 U.S. at 45-46 (noting that a trial court's exercise of its inherent powers is proper so long as it is "a reasonable response to a specific problem" and does not "contradict any express rule or statute").

9. Therefore, Dr. Amin respectfully requests the Court permit him to: (a) file Exhibit 1 hereto as a correction to ECF Doc. No. 42; and (b) file Exhibit 2 hereto as a correction to ECF Doc No. 48.

Respectfully submitted this 7th day of August, 2024.

<u>/s/ Ryan E. Harbin</u>

Stacey G. Evans
Georgia Bar No. 298555
sevans@staceyevanslaw.com
Ryan E. Harbin
Georgia Bar No. 370658
rharbin@staceyevanslaw.com
J. Amble Johnson
Georgia Bar No. 229112
ajohnson@staceyevanslaw.com

STACEY EVANS LAW
729 Piedmont Ave NE
Atlanta, GA 30308
(404) 850-6750 (phone)
(404) 850-6748 (fax)
Scott R. Grubman
Georgia Bar No. 317011
sgrubman@cglawfirm.com

CHILIVIS GRUBMAN
DALBEY & WARNER LLP

1834 Independence Square<br>
Atlanta, GA 30338<br>
(404) 233-4171 (phone)<br>
(404) 261-2842 (fax)

*Counsel for Plaintiff*

## Certificate of Service

I hereby certify that on the 7th day of August, 2024, I filed the foregoing Motion to File Corrected Briefs with PACER, which will automatically send email notifications of and serve such filing to counsel of record in this matter.

<u>/s/ Ryan E. Harbin</u><br>
Ryan E. Harbin<br>
Georgia Bar No. 370658

# TAB A

691 F.Supp.3d 1358
United States District Court, S.D.
Alabama, Southern Division.

CONTINENTAL AEROSPACE
TECHNOLOGIES, INC., Plaintiff,
v.
I.T.F. GROUP CORP., etc. et al., Defendants.

CIVIL ACTION 23-0072-WS-C
|
Signed September 12, 2023

**Synopsis**
**Background:** Buyer of robotic equipment brought action against sellers, asserting claims for breach of contract, breach of implied warranty, and negligence/wantonness. Nonresident seller moved to dismiss for lack of personal jurisdiction and for failure to state a claim.

**Holdings:** The District Court, William H. Steele, J., held that:

[1] buyer was not precluded from asserting specific personal jurisdiction over nonresident seller, even though pleadings relied on allegations of general jurisdiction;

[2] buyer's claims arose out of seller's contacts with forum state, as required for specific personal jurisdiction over seller;

[3] seller purposefully availed itself of the benefits of conducting business in Alabama, as required for specific personal jurisdiction;

[4] seller's conclusory assertion that it did no business in Alabama was insufficient on motion to dismiss to shift to buyer burden of producing evidence supporting jurisdiction;

[5] seller could not be liable for breach of contract where first alleged breach occurred after seller was no longer a party to the contract;

[6] buyer adequately stated claim for breach of the implied warranty of fitness for a particular purpose; and

[7] buyer adequately stated claim for negligence/wantonness.

Motion granted in part and denied in part.

**Procedural Posture(s):** Motion to Dismiss for Lack of Personal Jurisdiction; Motion to Dismiss for Failure to State a Claim.

West Headnotes (30)

[1] **Federal Courts** ← Unrelated contacts and activities;  general jurisdiction

Systematic and continuous contacts for general personal jurisdiction requires that the defendant be "at home" in the forum state.

[2] **Federal Courts** ← Corporations and business organizations

Paradigmatic fora in which a corporate defendant is "at home" for purposes of general personal jurisdiction are its states of incorporation and principal place of business.

[3] **Federal Courts** ← Corporations and business organizations

General personal jurisdiction over corporate defendant can be found outside locations of state of incorporation and principal place of business only in an exceptional case, such as when war forces a corporation to temporarily relocate.

[4] **Federal Courts** ← Manufacture, Distribution, and Sale of Products

Buyer of robotic equipment was not precluded from asserting specific personal jurisdiction over nonresident seller in breach-of-contract action even though pleadings relied on allegations of general jurisdiction, referring to systematic and continuous contacts with forum state, and complaint employed no buzzwords explicitly implicating specific jurisdiction; existence of personal jurisdiction was not to be determined by the presence or absence in the complaint of particular labels, and seller addressed specific jurisdiction in detail in its principal brief on motion to dismiss for lack of personal

jurisdiction, negating any suggestion it was unaware that specific jurisdiction was on the table. Fed. R. Civ. P. 12(b)(2).

More cases on this issue

[5]  **Federal Courts**  Purpose, intent, and foreseeability; purposeful availment

**Federal Courts**  Related contacts and activities; specific jurisdiction

Specific personal jurisdiction requires that the plaintiff's claims arise out of or relate to nonresident defendant's contacts with the forum state and that defendant purposefully availed itself of the privilege of conducting activities within the forum state.

[6]  **Federal Courts**  Weight and sufficiency

Plaintiff seeking to establish personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.

[7]  **Federal Courts**  Manufacture, Distribution, and Sale of Products

Robotic equipment buyer's claims for breach of contract, breach of implied warranty, and negligence/wantonness arose out of nonresident seller's contacts with forum state, as required for specific personal jurisdiction over seller, even though manufacturer was substituted as "seller" and contracting party before any of buyer's claims arose; there would be no contract to be breached had seller not made representations to buyer and entered the contract, and even after manufacturer replaced seller as contracting party, both seller and manufacturer remained involved in and responsible for the process of completing installation at buyer's facility in forum state, set-up, and final runoff, but ultimately refused to provide necessary documentation, instructions, or passwords.

More cases on this issue

[8]  **Federal Courts**  Related contacts and activities; specific jurisdiction

"Arise out of" standard for specific personal jurisdiction requires a causal relationship between the nonresident defendant's contacts with the forum state and the plaintiff's claims.

[9]  **Federal Courts**  Related contacts and activities; specific jurisdiction

Nonresident defendant's contacts with the forum state may be intertwined with his transactions or interactions with the plaintiff for purposes of specific personal jurisdiction; that is, a defendant's contacts with the plaintiff simultaneously may be, and often are, contacts with the forum state.

[10] **Federal Courts**  Purpose, intent, and foreseeability; purposeful availment

**Federal Courts**  Related contacts and activities; specific jurisdiction

Prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing are evaluated in determining whether nonresident defendant purposefully established minimum contacts within the forum state, for purposes of specific personal jurisdiction.

[11] **Federal Courts**  Manufacture, Distribution, and Sale of Products

Nonresident seller of robotic equipment purposefully availed itself of the benefits of conducting business in Alabama, as required for specific personal jurisdiction over seller in buyer's action asserting claims or breach of contract, breach of implied warranty, and negligence/wantonness, where seller solicited the sale of equipment to Alabama buyer for its Alabama facility, seller had agreed to deliver machinery to Alabama and provide a series of services in Alabama, including installation, set-up, runoff, and training, and the parties' contract provided that it was governed by Alabama law.

More cases on this issue

**[12]    Federal Courts**  Pleadings and motions

Attachments to complaint are considered part of complaint for purposes of motion to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 10(c), 12(b)(2).

**[13]    Federal Courts**  Pleadings and motions
**Federal Courts**  Evidence; Affidavits

Attacks on personal jurisdiction may be facial or factual.

**[14]    Federal Civil Procedure**  Response, reply, and surreply;  reply and surreply briefs

District courts ordinarily do not consider arguments raised for the first time on reply.

**[15]    Federal Civil Procedure**  Response, reply, and surreply;  reply and surreply briefs

Unless the offending party articulates an adequate reason for its failure to present in its principal brief an argument then available to it, the court will not grant relief based on arguments first raised in reply.

**[16]    Federal Courts**  Weight and sufficiency

Defendant challenging personal jurisdiction bears the initial burden to present evidence, which must consist of more than conclusory allegations that the defendant is not subject to jurisdiction.

**[17]    Federal Courts**  Presumptions and burden of proof
**Federal Courts**  Weight and sufficiency

To shift the burden of producing evidence of personal jurisdiction back to the plaintiff, a defendant's affidavit must contain specific factual declarations within the affiant's personal knowledge.

**[18]    Federal Courts**  Presumptions and burden of proof
**Federal Courts**  Weight and sufficiency

On motion to dismiss for lack of personal jurisdiction, summary assertions that the defendant never has done business in or directed contacts into the forum state are conclusory assertions of ultimate fact that are insufficient to shift to plaintiffs the burden of producing evidence supporting jurisdiction. Fed. R. Civ. P. 12(b)(2).

**[19]    Federal Courts**  Manufacture, Distribution, and Sale of Products

Did burden of proof shift to buyer?**No**
Robotic equipment seller's conclusory assertion that it did no business in Alabama was insufficient on motion to dismiss for lack of personal jurisdiction to shift to buyer burden of producing evidence supporting specific personal jurisdiction in action asserting claims or breach of contract, breach of implied warranty, and negligence/wantonness. Fed. R. Civ. P. 12(b)(2).

More cases on this issue

**[20]    Contracts**  Duties and liabilities of third persons

Under Alabama law, only party to contract may be successfully sued for breach of contract.

**[21]    Sales**  Participation in and relation to transaction

Original seller could not be liable for breach of contract for purchase and sale of robotic equipment under Alabama law, where first alleged breach occurred after original seller was no longer a party to the contract, because the parties had revised the contract to substitute manufacturer as the "seller" and contracting party, regardless whether original

seller continued to be involved with the sale, delivery, and installation of equipment after the contract was revised.

More cases on this issue

[22]  **Contracts**  Duties and liabilities of third persons

A natural and necessary corollary of the rule that only a party to the contract may be sued for its breach is that only a party to the contract at the time it is breached can be sued for such breach; this follows because only the parties at the time of breach have existing contractual promises to perform that they may fail to fulfill.

[23]  **Federal Civil Procedure**  Matters deemed admitted; acceptance as true of allegations in complaint

Court's duty to accept the facts in the complaint as true in deciding a motion to dismiss for failure to state a claim does not require the court to ignore specific factual details of the pleading in favor of general or conclusory allegations. Fed. R. Civ. P. 12(b)(6).

[24]  **Sales**  Machinery and equipment

Buyer of robotic equipment adequately stated claim against the original seller for breach of the implied warranty of fitness for a particular purpose under Article 2 of the Uniform Commercial Code (UCC), as adopted in Alabama, by alleging that it entered a contract with the original seller for the purchase and sale of robotic equipment, and that an Italian manufacturer was later substituted as the "seller" and contracting party, but the manufacturer failed to deliver robotic equipment that met the design and production specifications under the contract. Ala. Code § 7-2-315.

More cases on this issue

[25]  **Sales**  Implied warranties in general
**Sales**  Personal injuries

Absent personal injury, the plaintiff and defendant must be in privity of contract in order for an implied warranty of fitness for a particular purpose to arise under Article 2 of the Uniform Commercial Code (UCC), as adopted in Alabama. Ala. Code § 7-2-315.

[26]  **Sales**  Fitness for Particular Purpose or Use

Provision of Article 2 of the Uniform Commercial Code (UCC), as adopted in Alabama, governing implied warranties of fitness for a particular purpose does not by its terms address what the seller personally will do, but rather what standard the goods the buyer receives will meet. Ala. Code § 7-2-315.

[27]  **Products Liability**  Negligence or fault
**Products Liability**  Miscellaneous products

Buyer of robotic equipment adequately stated claim for negligence/wantonness against seller under Alabama law by alleging that seller and manufacturer, that was later substituted as the "seller" and contracting party, owed buyer a duty of reasonable care, which they breached, in properly designing, manufacturing, selling, installing, and providing post-purchase support for robotic equipment, and that after contractual relationship, seller had remained involved in and responsible for the process of completing the installation, set-up, and final runoff.

[28]  **Torts**  Breach of contract in general

While negation of a contractual relationship at the time of breach negates the existence of duties under the contract at that time, it does not negate the existence of tort duties, which can exist even absent a contractual relationship.

[29]  **Products Liability**  Economic losses; damage to product itself

Under Alabama law, economic-loss rule prevents tort recovery when product damages itself, causing economic loss, but does not cause

personal injury or damage to any property other than itself.

[30]  Products Liability  Economic losses; damage to product itself

Sales  Economic loss doctrine

Under Alabama law, premise underlying economic loss rule is that, when no injury to persons or other property occurs, losses from defective or non-performing product should be dealt with by contract or warranty.

**Attorneys and Law Firms**

\*1361 Howard G. Perdue, III, Robert Richardson Baugh, Dentons Sirote PC, Birmingham, AL, John Chas. Pierce, Dentons Sirote PC, Mobile, AL, for Plaintiff.

Craig Michael Warner, Pro Hac Vice, Beverly Whitley, Pro Hac Vice, Bell Nunnally & Martin, LLP, Dallas, TX, Robert Sewell Walker, Yates Anderson, Orange Beach, AL, for Defendants.

**ORDER**

WILLIAM H. STEELE, UNITED STATES DISTRICT JUDGE

This matter is before the Court on a motion to dismiss filed by the domestic defendant ("Group"). (Doc. 14). The plaintiff has filed a response and Group a reply, (Docs. 25, 26), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be granted in part and denied in part.

**BACKGROUND**

According to the complaint, the plaintiff manufactures and services engines of various \*1362 types. The defendants are two related entities, one domestic (Group) and one Italian ("Impianti"). The defendants solicited the sale of an expensive robotic piece of equipment ("FPM"), making representations on which the plaintiff relied. The plaintiff as buyer and Group as seller entered a contract for the purchase and sale of an FPM and for the provision of services incident thereto. Thereafter, the parties revised the contract to designate Impianti as the seller/manufacturer. (Doc. 1 at 3-5; Doc. 1-1).

Impianti manufactured the FPM in Italy, after which it was shipped to the plaintiff's Mobile, Alabama facility, "where [Impianti] technicians were to complete the installation, set-up, and final acceptance runoff" of the FPM. Due to the Covid pandemic, which was declared shortly after delivery of the FPM, Impianti technicians were unable to travel to Mobile. Eventually, the parties agreed that an unrelated domestic company ("Southern Tool") would complete set-up and final acceptance runoff, but the defendants "remained involved in and responsible for the process." The defendants failed to provide documentation or instructions necessary to complete installation, set-up, and final runoff, including by refusing to provide passwords to unlock the system. (Doc. 1 at 5-8).

The complaint asserts three causes of action against both defendants: (1) breach of contract; (2) breach of implied warranty; and (3) negligence/wantonness. (Doc. 1 at 8-11).

**DISCUSSION**

Group moves for dismissal under Rules 12(b)(2) and 12(b)(6), arguing that the Court lacks personal jurisdiction over it and that the complaint fails to state a claim against it.

**I. Personal Jurisdiction.**

The complaint alleges that Group is a Delaware corporation with its principal place of business in Michigan. (Doc. 1 at 1). It alleges that the Court has personal jurisdiction over Group because it "ha[s] maintained systematic and continuous business contacts within the State of Alabama, including by transacting and conducting business in the State of Alabama." (*Id.* at 2).

[1] [2] [3] "Systematic and continuous" is the language of general jurisdiction, which requires that the defendant be "at home" in the forum state. *E.g., Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011). The paradigmatic fora in which a corporate defendant is "at home" are its states of incorporation and principal place of business, *BNSF Railway Co. v. Tyrrell*, 581 U.S. 402, 413, 137 S.Ct. 1549, 198 L.Ed.2d

36 (2017), and the complaint rules out Alabama as either. General jurisdiction can be found outside those two locations only in "an exceptional case," such as when war forces a corporation to temporarily relocate from the Philippines to Ohio, from whence it centers its wartime activities. *Id.* (internal quotes omitted). The defendant denies that this is an exceptional case for personal jurisdiction purposes, and the plaintiff prudently does not disagree.

 [4]  [5]  The plaintiff instead relies on specific jurisdiction. (Doc. 25 at 5-13). [1] **\*1363** Such jurisdiction requires that the plaintiff's claims "arise out of or relate to" Group's contacts with Alabama and that Group "purposefully availed itself of the privilege of conducting activities within" Alabama. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1313 (11th Cir. 2018) (internal quotes omitted).

 [6]  "A plaintiff seeking to establish personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (internal quotes omitted). Group argues that the complaint fails to allege sufficient facts to make out a prima facie case that the plaintiff's claims arise out of or relate to Group's contacts with Alabama or that Group purposefully availed itself of the privilege of conducting activities within the state. (Doc. 14 at 11-14).

 [7]  [8]  As Group notes, the "arise out of" standard requires a causal relationship between the defendant's contacts and the plaintiff's claims. *E.g., Waite*, 901 F.3d at 1314. Group assumes there can be no such causal relationship here, on the grounds that Impianti was substituted for Group as the seller and contracting party before any of the plaintiff's claims arose. (Doc. 14 at 12). Group provides no authority or analysis to support its dubious position, which appears to be a *non sequitur*. Whether Group can be liable for breach of contract is a separate question to be discussed in Part II.A but, according to the complaint, there would be no contract to be breached had Group not made representations to, and entered a contract with, the plaintiff. That is certainly a causal connection between Group's contacts with Alabama and the plaintiff's causes of action, supported by allegations of the complaint, and Group has failed to demonstrate that it is a legally insufficient one. [2]

As noted, the complaint also alleges that, even after Impianti replaced Group as the contracting party, both defendants "remained involved in and responsible for the process" of completing installation, set-up, and final runoff but ultimately refused to provide necessary documentation, instructions, or passwords, leaving the plaintiff "no option" but to bring the instant lawsuit. (Doc. 1 at 6-8). These allegations appear plainly to assert contacts by Group with Alabama that are causally related to the plaintiff's causes of action. Group addresses these allegations only by huffing that they do not call out Group by name but instead use the terms "ITF Defendants" and "ITF." (Doc. 26 at 3). In a lawsuit with only two defendants, use of the plural necessarily incorporates Group. Moreover, and contrary to Group's denial, (*id.*), the complaint defines "ITF" as meaning both Group and Impianti. (Doc. 1 at 2). Group may not like this form of pleading, **\*1364** but it has identified no authority rendering it impermissible.

 [9]  As for purposeful availment, Group notes that minimum-contacts analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014). Thus, "the plaintiff cannot be the only link between the defendant and the forum." *Id.* Without discernible explanation, Group asserts that the plaintiff is the only link between Group and the state of Alabama, such that specific jurisdiction cannot exist. (Doc. 14 at 13). To the uncertain extent that Group intends to suggest that, to support specific jurisdiction, a defendant must have contacts directly with the state *qua* state, or with residents of the state in addition to the plaintiff, it is mistaken: "[A] defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff ...." *Walden*, 571 U.S. at 286, 134 S.Ct. 1115. That is, a defendant's contacts with the plaintiff simultaneously may be – and often are – contacts with the forum state for personal jurisdiction purposes.

 [10]  "It is ... prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing ... that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Group acknowledges this is as the governing standard but fails to apply it. (Doc. 14 at 13). Applying this standard, the complaint clearly reflects that Group purposefully availed itself of the benefits of conducting business in Alabama.

 [11]  [12] As for prior negotiations, the complaint alleges that Group "solicited the sale" of an FPM to the Alabama plaintiff for its Alabama facility. (Doc. 1 at 1, 3). As for the terms of the contract and contemplated future consequences, Group agreed to deliver an expensive piece of machinery to Alabama and provide a series of services in Alabama, including installation, set-up, runoff, and training. (Doc. 1-1).[3] Moreover, the contract provides that is governed by Alabama law, (*id.* at 2), which reinforces Group's purposeful availment of the benefits of conducting activities in the state. *Burger King*, 471 U.S. at 482, 105 S.Ct. 2174. As for actual course of dealing, the complaint alleges that Group, whether or not pursuant to contract, "remained involved in and responsible for the process" of installation, set-up, and final runoff, (Doc. 1 at 6, 10), all of which are activities either conducted in, or directed towards, Alabama over an extended period of time, stretching from at least November of 2021 to at least August of 2022. (Doc. 1 at 5-6; Doc. 1-1 at 2).

It might be possible to argue that these substantial allegations are nevertheless inadequate as a matter of law to support personal jurisdiction under the *Burger King* standard. Group, however, has made no such argument, and the Court will not concoct or support one on its behalf.[4]

 *1365 The one argument Group does makes is that its contract with the plaintiff cannot support personal jurisdiction "simply because it was aborted and attenuated." (Doc. 14 at 13). Without showing that the contract's negotiation, terms, and contemplated future consequences are themselves insufficient to support personal jurisdiction – a task that Group has not undertaken – it is difficult to see how the asserted brevity of the contractual relationship could negate personal jurisdiction. Could a foreign defendant that entered a contract with terms, and under circumstances, supporting personal jurisdiction in Alabama, nevertheless avoid an Alabama forum on a claim for breach of contract simply by reneging on the contract shortly after entering it? Again, Group's failure to support its *ipse dixit* obviates further consideration. Moreover, Group has not addressed its alleged post-contractual involvement in the installation, set-up, and runoff of the FPM or explained how those allegations do not indicate its purposeful availment of the privilege of doing business in Alabama.

 [13]  [14]  [15] Attacks on personal jurisdiction may be facial or factual. *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1271 (11th Cir. 2022). In its principal brief, Group raised only a facial challenge to specific jurisdiction. In its reply brief, Group for the first time raises a factual challenge. (Doc. 26 at 3-4).[5] As this Court has stated many times, "[d]istrict courts, including this one, ordinarily do not consider arguments raised for the first time on reply." *Arnold v. State Farm Fire and Casualty Co.*, 268 F. Supp. 3d 1297, 1303 (S.D. Ala. 2017). "Unless the offending party articulates an adequate reason for its failure to present in its principal brief an argument then available to it, the Court will not grant relief based on arguments first raised in reply." *Parker v. Exterior Restorations, Inc.*, 653 F.Supp.3d 1105, 1108 (S.D. Ala. 2023). Group has offered no reason for not making a factual challenge in its principal brief, and no reason is necessarily an inadequate reason.

 [16]  [17]  [18] Even were Group's factual challenge timely, it would not succeed. The defendant bears the initial burden to present evidence, which must consist of more than "conclusory allegations that the defendant is not subject to jurisdiction." *Meier ex rel. Meier v. Sun International Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). Rather, "[t]o shift the burden back to the plaintiff, a defendant's affidavit must contain specific factual declarations within the affiant's personal knowledge." *Louis Vuitton*, 736 F.3d at 1351 (internal quotes omitted). Thus, for example, "summar[y] assert[ions]" that the defendant "never has done business in or directed contacts into" the forum state are "conclusory assertions of ultimate fact [that] are insufficient to shift to the Plaintiffs the burden of producing evidence supporting jurisdiction." *Posner v. Essex Insurance Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999).

 [19] The skeletal declaration on which Group relies includes only three statements regarding personal jurisdiction: (1) that Group "has done no business in Alabama"; (2) that the contract was amended "before [Group] did any work under the contract"; and (3) that Group "has no employees, offices, or assets in Alabama." (Doc. 14-1). The third statement is not relevant to specific jurisdiction. The first is a "conclusory assertion of ultimate fact" that cannot shift the burden to the plaintiff. The second appears to be a specific factual statement based on the declarant's personal knowledge, but it does not advance the ball because, as discussed previously, *1366 Group has failed to show that personal jurisdiction depends on what Group did under the contract as opposed to what it promised to do, and because the complaint alleges additional, non-contractual undertakings to provide post-delivery support.

In summary, Group is not entitled to dismissal of the complaint for lack of personal jurisdiction. [6]

## II. Failure to State a Claim.

### A. Breach of Contract.

Count I identifies the contract as the Purchase and Sale Agreement ("PSA"). (Doc. 1 at 4, 8). The PSA was entered into between the plaintiff and Group in March 2019. (*Id.* at 5; Doc. 1-1). [7] The PSA identifies the contracting parties as the plaintiff (denominated as "Buyer") and Group (identified as "Seller"). (*Id.* at 1-1). However, "the parties later agreed to revise the original purchase order to specify that the seller/manufacturer of the FPM would be [Impianti] ...." (Doc. 1 at 5). The date of this revision is unstated, but it necessarily occurred before the FPM was manufactured, since the reason for the revision was that "the manufacturing obligations under the contract would be [*i.e.*, in the future] completed" at the Italian facility. (*Id.*). The FPM was delivered to the plaintiff in February 2020. (*Id.*). Count I alleges that the contract was breached in that the defendants "failed to deliver the FPM meeting the design and production specifications" agreed to and by conduct subsequent to delivery. (*Id.* at 8-9).

[20]   Only a party to a contract may be successfully sued for breach of the contract. *Roland v. Cooper*, 768 So. 2d 400, 404 (Ala. Civ. App. 2000) ("Cooper was not a party to the sales contract, so he could not be sued for breach of that contract ...."); *accord Pate v. Rollison Logging Equipment, Inc.*, 628 So. 2d 337, 343 (Ala. 1993) ("Even if considered a broker or an agent, Rollison was not a party to the insurance contracts and, therefore, could not be liable for breach of those contracts."); *Ligon Furniture Co. v. O.M. Hughes Insurance, Inc.*, 551 So. 2d 283, 285 (Ala. 1989) ("The undisputed evidence reveals that [the defendants] were not parties to [the insurance contract]. Thus, the trial court properly entered summary judgment on the claim alleging a breach of the insurance contract.").

[21]   Group argues that the complaint negates its status as a contracting party as of the earliest date the complaint alleges the contract was breached. (Doc. 14 at 16-19). Group is plainly correct. The PSA by its terms limits the contracting parties to two: the buyer and the seller. By alleging that the parties revised the PSA to specify that Impianti would be the seller, the complaint necessarily alleges that Group at that time ceased to be a party to the contract. By alleging that this revision occurred before manufacture of the FPM and that the first breach occurred after manufacture, the complaint necessarily alleges that Group was not a party to the contract at the time of its breach.

[22]   A natural and necessary corollary of the rule that only a party to the contract may be sued for its breach is that only a party to the contract at the time it is breached can be sued for such breach. This follows because only the parties at the time of breach have existing contractual promises to perform that they may fail to fulfill. The plaintiff does not disagree.

**\*1367**  [23]   Instead, the plaintiff insists without explanation that "[t]he Complaint alleges that ITF Group was a party to the contract at the time [the plaintiff] was injured due to the breach of contract." (Doc. 25 at 13). In light of the allegations identified above, the plaintiff is clearly incorrect. To the uncertain extent the plaintiff believes that the conclusory allegation in Count I that "ITF [defined as Group and Impianti collectively] has breached and continue[s] to breach the contract," (Doc. 1 at 8), constitutes a controlling allegation that Group was a party to the PSA when it was allegedly breached, it is again mistaken. "Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations." *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). Because the specific allegations of the complaint negate Group's status as a contracting party at the time of breach, a general allegation that Group breached the contract cannot save the claim from dismissal. *See, e.g., SA Palm Beach, LLC v. Certain Underwriters at Lloyd's London*, 32 F.4th 1347, 1362 (11th Cir. 2022) (where coverage depended on whether there was "physical damage" to the insured property, specific allegations regarding the damage governed over a general allegation that physical damage occurred); *see also Griffin Industries*, 496 F.3d at 1206 ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").

The plaintiff also argues that the complaint alleges that Group "continued to be involved with the sale, delivery, and installation of the FPM" well after the PSA was revised. (Doc. 25 at 16). Any involvement, however, could not have been as a party to the PSA, which is the only contract on which Count I is based. (Doc. 1 at 8).

Finally, the plaintiff objects that Group improperly relies on the doctrine of novation, which, it says, does not apply here because the complaint does not allege that a new contract was

substituted for the original PSA. (Doc. 25 at 14-16). Group has not asserted a novation, and it is not required to show a novation in any technical sense in order to obtain dismissal. What Group has shown is that the complaint alleges that, by mutual agreement, Group ceased to be a party to the PSA prior to its alleged breach. Because, as the plaintiff recognizes, only a party to the contract at the time of its breach can be sued for that breach, Group is entitled to dismissal of Count I.

### B. Breach of Implied Warranty.

 **[24]**  Count II alleges that the defendants breached an implied warranty of fitness for a particular purpose. (Doc. 1 at 9). Such a warranty is governed by Alabama's version of the Uniform Commercial Code:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under Section 7-2-316 an implied warranty that the goods shall be fit for such purpose.

Ala. Code § 7-2-315.

Group does not argue that, when it entered the PSA in March 2019, it did not do so as a "seller" within the contemplation of this provision. [8] Nor does Group address whether at that time it had reason to know both the particular purpose for which the **\*1368** plaintiff required the FPM and that the plaintiff was relying on Group's skill or judgment to select or furnish suitable goods. In short, Group does not argue that the complaint fails to allege that Group provided a warranty of fitness for a particular purpose at the time of contracting in March 2019.

 **[25]**  Instead, Group argues that, once it was "replaced as seller" by Impianti, it had no remaining "warranty obligations" and so cannot be sued for a breach of warranty that allegedly occurred thereafter. (Doc. 14 at 19-20). Group is correct that, absent personal injury, the plaintiff and defendant must be in privity of contract in order for an implied warranty of fitness for a particular purpose to arise. Group assumes that this means the plaintiff and defendant must remain in privity of contract until the warranty is breached, but it provides insufficient authority to support that assumption, and the Court finds reason to question it.

The PSA states that the seller will provide certain equipment that meets certain requirements. (Doc. 1-1). Because the seller is promising its own performance, only the seller can breach the contract by failing to perform. Thus, when Impianti replaced Group as seller, Group had no remaining contractual obligations under the PSA.

 **[26]**  Implied warranties may work a little differently. Section 7-2-315 does not by its terms address what the seller personally will do but rather what standard the goods the buyer receives will meet. The provision therefore appears to leave open the possibility that a seller who provides the buyer a warranty of fitness for a particular purpose but later shifts the 'seller' label to another remains liable for a later breach of the warranty it provided as the original seller.

Group relies on cases stating that, absent privity of contract, "there is no right of action" for breach of an implied warranty resulting in only economic loss. In each of these cases, however, there was never privity between the plaintiff and defendant, which means that no warranty ever arose. [9] Because none of these cases address the fact pattern present here – where privity existed when the warranty allegedly arose but later ended – they do not establish Group's entitlement to dismissal. [10]

 **\*1369**  The Court has and expresses no opinion as to whether Group could demonstrate that the plaintiff possesses no viable warranty claim against it. The Court rules only that Group in its motion to dismiss has not done so.

### C. Negligence/Wantonness.

 **[27]**  Count III alleges that the defendants owed the plaintiff a duty of reasonable care, which they breached, in properly "designing, manufacturing, selling, installing, and providing post-purchase support for[,] the FPM system." (Doc. 1 at 10-11). Group argues that the complaint fails to plead that Group "did, or was responsible to do, any of that work." (Doc. 14 at 20). Group does not explain how an allegation that a defendant had a duty to act reasonably in certain particulars fails to encompass an allegation that the defendant had a duty to act at all in those particulars. Moreover, the complaint expressly alleges that, even after Southern Tool's

involvement, Group "remained involved in and responsible for the process" of "complet[ing] the installation, set-up, and final runoff." (Doc. 1 at 6).

[28] Group suggests that the complaint negates any tort duty, on the grounds that, as discussed in Part II.A, Group ceased to be a contracting party early in the relationship. (Doc. 14 at 20). While the complaint's negation of a contractual relationship at the time of breach negates the existence of duties under the contract at that time, it does not negate the existence of tort duties, which obviously can exist even absent a contractual relationship.

[29] Group's main argument is that its liability under Count III is barred by Alabama's economic loss rule. (Doc. 14 at 21-22). "The economic-loss rule prevents tort recovery when a product damages itself, causing economic loss, but does not cause personal injury or damage to any property other than itself." *Vesta Fire Insurance Corp. v. Milam & Co.*, 901 So. 2d 84, 106 (Ala. 2004). The complaint does not allege that the FPM caused personal injury or damage to any other property, and Count III alleges only "economic and market damage." (Doc. 1 at 11).

The plaintiff objects that the economic loss rule cannot apply here because the FPM has not damaged itself but simply "has not worked for the needs of" the plaintiff. (Doc. 25 at 16-17). For reasons expressed in the Court's contemporaneous order resolving Impianti's motion to dismiss, the Court disagrees.

[30] Although the economic loss rule applies when, as here, a product simply fails to perform, the plaintiff's argument does expose a potential difficulty with Group's position. The premise underlying the economic loss rule is that, when no injury to persons or other property occurs, losses from a defective or non-performing product should be dealt with by contract or warranty, and the cases appear to assume a contractual or warranty relationship between the plaintiff as buyer and the defendant as manufacturer or other seller. *See, e.g.*, *Lloyd Wood Coal Co. v. Clark Equipment Co.*, 543 So. 2d 671, 673-74 (Ala. 1989) (explaining why a buyer's remedies should be limited to contract and warranty); *Bay Lines, Inc. v. Stoughton Trailers, Inc.*, 838 So. 2d 1013, 1020 (Ala. 2002) (damages in the form of "increased costs of doing business and customer displeasure are precisely the sorts of risks that can be considered before entering into a contract and that can be allocated in the contract[, and] [w]e should refrain from permitting tort actions when the basis for **\*1370** the claims should properly be dealt with between the parties under the law of contracts.").

As noted, Group denies any existing contractual or warranty relationship with the plaintiff. Group, however, has not explained how it can be protected by the economic loss rule under such circumstances. *See BMTP, LLC v. RBH, Inc.*, 2020 WL 6868840 at \*4 n.3 (N.D. Ala. 2020) ("Because Plaintiffs were not parties to a contract with [the defendant], Alabama's economic loss rule would not apply to bar their claims – even if Alabama law applied here."). The Court has and expresses no opinion as to whether Group could demonstrate the applicability of the economic loss rule to its situation. The Court rules only that Group in its motion to dismiss has failed to do so.

**D. Leave to Amend.**

The plaintiff argues it should be permitted to amend the complaint to address any deficiency. (Doc. 25 at 17). Group responds that "the issue is not properly raised," because the plaintiff has neither explained what it would change nor submitted a proposed amended complaint. Moreover, it says, "the defects are incurable based on the facts alleged." (Doc. 26 at 8-10).

The plaintiff has not filed a motion for leave to amend, as Rule 7(b)(1) requires. There is thus nothing properly before the Court on which to rule. *Posner*, 178 F.3d at 1222 ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum [rather than in a motion pursuant to Rule 7(b)], the issue has not been raised properly."). The Court has and expresses no opinion as to whether the plaintiff could or would obtain leave to amend via a proper motion. The Court rules only that the plaintiff may not obtain such relief by the means it has employed.

**CONCLUSION**

For the reasons set forth above, Group's motion to dismiss is **granted** with respect to Count I and is in all other respects **denied**.

DONE and ORDERED this 12th day of September, 2023.

**All Citations**

691 F.Supp.3d 1358, 112 UCC Rep.Serv.2d 27

# Footnotes

| | |
|---|---|
| 1 | Group in its reply brief objects that the plaintiff's brief in opposition "focuses on specific jurisdiction even though [the complaint] relied wholly on allegations of general jurisdiction," citing the pleading's reference to "systematic and continuous" contacts with Alabama. (Doc. 26 at 1). To the uncertain extent that Group intends to suggest the plaintiff may not rely on specific jurisdiction, either because the complaint employed no buzzwords explicitly implicating that concept or because Group did not realize that specific jurisdiction was in play until receiving the plaintiff's brief, the argument is insupportable. First, Group identifies no authority for the proposition that the existence of personal jurisdiction is to be determined by the presence or absence in the complaint of particular labels or thaumaturgical terms rather than by its actual allegations. Second, Group in its principal brief addressed specific jurisdiction in detail, (Doc. 14 at 11-14), negating any suggestion it was unaware that specific jurisdiction was on the table. |
| 2 | Had the plaintiff entered a contract with Group and later entered a separate, unrelated contract with Impianti because of its experience with Group, that would probably be too attenuated a causal connection to support specific jurisdiction. *See Goodyear*, 564 U.S. at 931 n.6, 131 S.Ct. 2846 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."). Here, however, the contract with Impianti *is* the contract with Group, with all terms identical and only the seller/contracting party's identity altered. |
| 3 | Attachments to the complaint are considered part of the complaint for purposes of Rule 12. *Thaeter v. Palm Beach County Sheriff's Office*, 449 F.3d 1342, 1352 & n.7 (11th Cir. 2006); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). |
| 4 | In its reply brief, Group argues generally that its contacts did not knit it as closely to the forum state as did the defendant's contract in *Burger King.* (Doc. 26 at 2-3). Group should have presented this argument in its principal brief but, in any event, it has failed to show that the specific facts of *Burger King* establish a constitutional floor for personal jurisdiction. |
| 5 | Group submitted a declaration with its principal brief, (Doc. 14-1), but it employed this evidence exclusively in the context of general jurisdiction. (Doc. 14 at 7, 9-10). |
| 6 | Because it would not affect the resolution of Group's motion to dismiss, the plaintiff's motion for leave to file a supplemental memorandum, (Doc. 35), is **denied as moot**. |
| 7 | Because the PSA is an exhibit to the complaint, it is part of the complaint for all purposes, including Rule 12. *See note* 3, *supra.* |
| 8 | " 'Seller' means a person who sells or contracts to sell goods." Ala. Code § 7-2-103(1)(d). |
| 9 | *See Johnson v. Anderson Ford, Inc.*, 686 So. 2d 224, 227 (Ala. 1996) (buyer of rebuilt engine was not in privity with dealer but only with manufacturer); *Rhodes v. General Motors Corp.*, 621 So. 2d 945, 947 (Ala. 1993) (consumer was not in privity with manufacturer); *Wellcraft Marine v. Zarzour*, 577 So. 2d 414, 419 (Ala. 1990) (same); *Barré v. Gulf Shores Turf Supply, Inc.*, 547 So. 2d 503, 504 (Ala. 1989) (buyer from original consumer was not in privity with retailer). |
| 10 | The plaintiff's closest case is *Jim Walter Resources, Inc. v. Downard Longwall, Inc.*, 2008 WL 11380012 (N.D. Ala. 2008). The plaintiff sought a quote from an individual ("Downard"). Downard submitted a quote on behalf of one of his two entities ("Longwall"). The plaintiff "accepted Longwall's quote" with a purchase order indicating Downard's other entity ("Hydraulics") as the seller. At Downard's request, the plaintiff re-issued the purchase order so as to indicate Longwall as the proper seller. *Id.* at *1-3. The Court described |

the original designation of Hydraulics as a "mistak[e]" that was "corrected" by the re-issued purchase order. *Id.* at *3-4. This means that Hydraulics was never a party to the contract – and indeed, could not have been a party without its agreement, which the opinion does not indicate was ever given. Somewhat inconsistently, the opinion also states that the corrected purchase order "acts as a modification of the contract thereby substituting Longwall for Hydraulics as the seller," such that Hydraulics "was no longer" a party to the contract. *Id.* at *4. In any event, the opinion does not state that any implied warranty ever arose vis-à-vis Hydraulics that was then cut off by the corrected purchase order. To the doubtful extent that the case can be read to support Group's position, the Court finds it unpersuasive, given its failure to articulate such a principle, to provide reasoning in support of it, or to show that such a principle was necessary to the Court's ruling.

---

**End of Document**  © 2024 Thomson Reuters. No claim to original U.S. Government Works.