# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

```
DR. MAHENDRA AMIN, M.D.,

     Plaintiff,

     v.                                        CV 5:24-022

RACHAEL O'BRIEN; MORBID: A TRUE
CRIME PODCAST LLC d/b/a Morbid
Network; WONDERY, LLC; and
AMAZON.COM, INC.,

     Defendants.
```

## ORDER

Before the Court is a motion for entry of default against Defendant Rachael O'Brien filed by Plaintiff Mahendra Amin, M.D., dkt. no. 38, and a motion to dismiss Plaintiff's complaint for lack of personal jurisdiction filed by Defendant O'Brien, dkt. no. 46. The motions have been fully briefed, dkt. nos. 40, 47, 48-1, 56, and are ripe for review.

## BACKGROUND

The following facts are taken from Plaintiff's complaint. Plaintiff is the only obstetrician gynecologist physician in rural Irwin County, Georgia. Dkt. No. 1 ¶¶ 32. In addition to treating patients at his office, he also treated patients detained by United States Immigration Customs Enforcement ("ICE") at the Irwin County Detention Center ("ICDC"). Id. ¶ 2. Around September 2020, the media began reporting allegations—brought by "whistleblower" Dawn

Wooten and an advocacy organization that sought to abolish ICE and close down ICDC—that women detained by ICE at ICDC had been subjected by Plaintiff to high numbers of hysterectomies without informed consent. Id. ¶ 3.

According to the complaint, the allegations were "discredited almost immediately." Id. ¶ 4. However, on April 16, 2023, several months after the U.S. Senate and various media outlets found the allegations false, Defendants published a podcast entitled, *Seven Deadly Sinners*, Episode 142: *The Uterus Collector*. Id. ¶¶ 5, 6, 97. The complaint alleges that the episode falsely accuses Plaintiff of being an abusive physician who performed mass hysterectomies and sterilization on women detained by ICE at ICDC. Id. ¶ 7. According to the complaint, the statements made during the podcast contradicted the factual evidence and attacked Plaintiff's character, accusing him of crimes and damaging his reputation as a physician. Id. ¶ 8.

Plaintiff initiated this defamation action on March 27, 2024 against Defendant Rachael O'Brien, who creates and hosts *Seven Deadly Sinners*; Morbid: A True Crime Podcast LLC ("Morbid"), a podcast network including *Seven Deadly Sinners*; Wondery LLC, a podcast publishing company which publishes Morbid; and Amazon.com, Inc., which owns Wondery. Id. ¶¶ 11-13.

## DISCUSSION

Before the Court are two competing motions: Plaintiff's motion for entry of default against Defendant O'Brien, dkt. no.

38, and Defendant O'Brien's motion to dismiss Plaintiff's complaint for lack of personal jurisdiction, dkt. no. 46. Because personal jurisdiction over a defendant is required for a valid entry of default, Rash v. Rash, 173 F.3d 1376, 1381 (11th Cir. 1999), the Court begins its analysis with Defendant O'Brien's motion to dismiss for lack of personal jurisdiction.

I. **Defendant O'Brien's Motion to Dismiss**

A. **Jurisdictional Facts**

Defendant O'Brien is an entertainer who has previously worked as an actress and a touring comedian. Dkt. No. 1 ¶ 45. She "rose to prominence as a romantic partner and friend of the stars of the popular reality television show 'Vanderpump Rules,' though she does not seem to have appeared on the show in several years." Id. ¶ 46.

Plaintiff alleges that in 2020, Defendant O'Brien began publishing the *Seven Deadly Sinners* podcast, of which there are 200 episodes that focus on people O'Brien labels "sinners." Id. ¶ 48. Defendant O'Brien counters via declaration that though she "was obliged to provide host services as to the podcast . . . and to be reflected as the publisher along with Morbid and Wondery in Apple Podcasts," she "in fact . . . did not publish the podcast." Dkt. No. 46-2 ¶ 4. She explains that her business, which she conducts from her home in Colorado, "is to create podcasts for sale to other entities which use the podcasts for publication." Id. ¶ 3; see also id. ¶¶ 2, 4; Dkt. No. 1 ¶ 10. Defendant O'Brien

3

states that in April 2022, she entered into an agreement with Defendant Morbid wherein they agreed that she would create and sell her rights to *Seven Deadly Sinners*. Dkt. No. 46-2 ¶ 4. O'Brien specifies that she licensed her rights to distribute each episode of the podcast to Morbid, which was given sole control over the podcast and its use. Id.

As for her contacts with Georgia, Defendant O'Brien declares she has never been a resident or citizen of Georgia, she has no offices in Georgia and never has, she has never owned, used or possessed any real property in Georgia, and she has visited Georgia only by passing through it. Id. ¶ 3. Plaintiff has presented no evidence to controvert Defendant O'Brien's statements, only argument.

### B. Legal Authority

"In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant." Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988). This standard is satisfied "if the plaintiff presents enough evidence to withstand a motion for directed verdict." Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990). A party presents enough evidence to withstand a motion for directed verdict by putting forth "substantial evidence . . . of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different

conclusions . . . ." Walker v. NationsBank of Fla. N.A., 53 F.3d 1548, 1555 (11th Cir. 1995). In making this determination, the Court must construe the allegations in the complaint as true to the extent they are not controverted by the defendant's affidavits, and the facts must be viewed in the light most favorable to the plaintiff. See Morris, 843 F.2d at 492.

### C. Personal Jurisdiction

The analysis of personal jurisdiction involves a two-step process: (1) determine whether Georgia's long-arm statute authorizes the exercise of personal jurisdiction over the defendant, and (2) determine whether the exercise of personal jurisdiction is consistent "with the Due Process requirements of the federal Constitution." Murphy v. Aventis Pasteur, Inc., 270 F. Supp. 2d 1368, 1378 (N.D. Ga. 2003).

#### i. Georgia's Long Arm Statute

Georgia's long-arm statute provides, in pertinent part, that a court may exercise personal jurisdiction over a nonresident who:

> (1) Transacts any business within this state;
>
> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]

O.C.G.A. § 9-10-91(1)-(3). The long-arm statute requires "that an out-of-state defendant must do certain acts within the State of

Georgia before he can be subjected to personal jurisdiction." Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank, 620 S.E.2d 352, 353 (Ga. 2005) (citation omitted). The Court is to construe the "statute literally and give full effect to the breadth of its language." Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1264 (11th Cir. 2010).

Though he does not identify Defendant O'Brien independently, Plaintiff asserts the Court has personal jurisdiction over *all* Defendants because "they caused a tortious injury in this state" and they "regularly do or solicit business in Georgia and engage in a persistent course of conduct in Georgia." Dkt. No. 1 ¶ 20. Specifically, Plaintiff alleges Defendants "publish[] podcasts that are available to Georgia listeners" and "solicit[] and obtain[] subscribers through an interactive web site available in Georgia." Id. ¶ 22. Plaintiff further alleges "Defendants have a substantial community of listeners and subscribers, including paying subscribers, in Georgia." Id. ¶ 23. The Court turns to Georgia's long-arm statute.

### 1. Prong One

Plaintiff first alleges personal jurisdiction over Defendant O'Brien is proper under the first prong of Georgia's long-arm statute. Dkt. No. 48-1 at 9.

> "[T]o satisfy the long-arm statute, a nonresident defendant must 'do certain acts within the state of Georgia,'" and "[u]nder subsection (1), the certain act is '[t]ransact[ing] any business within this state.'" Diamond Crystal Brands, Inc., 593 F.3d at 1260 (last two

6

alterations in original) (quoting Innovative Clinical & Consulting Servs., LLC v. First Nat. Bank of Ames, 620 S.E.2d 352, 353 (Ga. 2005) & O.C.G.A. § 9-10-91(1)). There is a three-part test for determining whether a defendant has transacted business in the state of Georgia under which the Court determines whether: "(1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) [ ] the cause of action arises from or is connected with such act or transaction, and (3) [ ] the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice." Aero Toy Store, LLC v. Grieves, 631 S.E.2d 734, 737 (Ga. Ct. App. 2006) (footnote omitted). The Eleventh Circuit "interpret[s] the first prong of this test as reflecting the requirement of subsection (1) of the long-arm statute and the second and third prongs as comprising the traditional due process inquiry." Diamond Crystal Brands, Inc., 593 F.3d at 1260 n.11 ("The significance of the three-prong approach is that, under Georgia law, there must be a long-arm assessment that is separate and apart from the due process analysis."). To transact business in Georgia, "a defendant need not physically enter the state," but rather "a nonresident's mail, telephone calls, and other 'intangible' acts, though occurring while the defendant is physically outside of Georgia, must be considered." Id. at 1264 (citation omitted); see also O'Malley v. Wire Weld, Inc., 1:09-cv-2843-WSD, 2009 WL 10669355, at *6 (N.D. Ga. Dec. 7, 2009) (citations omitted) (explaining that "[p]hone calls and emails may, in certain circumstances, support a finding that a defendant purposefully availed itself of the forum state," including where "the intangible contacts were central to the parties' relationship, or the cause of action"). Even a "'single event may be a sufficient basis for the exercise of long arm jurisdiction if its effects within the forum are substantial enough even though the nonresident has never been physically present in the state.'" Packard v. Temenos Advisory, Inc., 159 F. Supp. 3d 1344, 1357 (S.D. Ga. 2016) (citation and internal marks omitted) (quoting Aero Toy Store, LLC, 631 S.E.2d at 739). Accordingly, the Court must "examine all of a nonresident's tangible and intangible conduct and ask whether it can fairly be said that the nonresident has transacted any business within Georgia." Diamond Crystal Brands, Inc., 593 F.3d at 1264 (footnote omitted). However, the Eleventh Circuit has instructed that "unless and until the Georgia courts provide further authoritative guidance,

7

> courts in this circuit construing the statute literally will have to delineate the precise contours of the '[t]ransacts any business within this state' . . . according to the facts of each case." Id. at 1263 (first alteration in original) (footnote omitted).

Risper v. Mountain Run Sols., LLC, No. 320CV00209TCBRGV, 2021 WL 7708393, at *4 (N.D. Ga. Nov. 24, 2021), report and recommendation adopted, No. 3:20-CV-209-TCB, 2021 WL 7708538 (Dec. 10, 2021).

Plaintiff contends the complaint contains multiple allegations to show Defendant O'Brien transacted business in Georgia. Dkt. No. 48-1 at 10. For example, the complaint states "Defendants . . . publish[] podcasts that are available to Georgia listeners" and "solicit[] and obtain[] subscribers through an interactive web site available in Georgia. Upon information and believe [stet], Defendants have a substantial community of listeners and subscribers, including paying subscribers, in Georgia." Id. at 10-11 (quoting Dkt. No. 1 ¶¶ 22-23). Plaintiff also contends that Defendant O'Brien's "business is inherently internet-based. It is the only way her content reaches her audience. It is the only way she generates profit." Id. at 13-14. Finally, Plaintiff argues "Defendants' web site is their profit center, through subscriptions, merchandise, and ads." Id. at 15.

In her declaration, Defendant O'Brien states her "business is to create podcasts for sale to other entities which use the podcasts for publication"; she "entered and signed an agreement with Defendant Morbid . . . dated April 17, 2022, wherein [she]

8

and Morbid agreed that [she] would create and sell for a price, rights to a podcast called *Seven Deadly Sinners*"; she "licensed [her] rights to distribute each episode of the podcast at issue, to Morbid"; "Morbid was given sole control over the podcast and its use"; and though she provided host services for the podcast and agreed "to be reflected as the publisher along with Morbid and Wondery," she "in fact . . . did not publish the podcast in any particular place"; and she "had no control over location[;] Morbid had that control."  Dkt. No. 46-2 ¶¶ 3-4.

### 2. Prong Two

Prong two of Georgia's long-arm statute "permits a Georgia court to exercise personal jurisdiction over a nonresident if he '[c]ommits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act.'"  Worthy v. Eller, 594 S.E.2d 699, 700 (Ga. Ct. App. 2004).  "The language of the statute is clear, unequivocal and unambiguous in mandating the exclusion of an action predicated on defamation." Id. (quoting Balmer v. Elan Corp., 583 S.E.2d 131 (Ga. Ct. App. 2003)).  Accordingly, Defendant O'Brien is not subject to suit in Georgia for acts allegedly constituting defamation, at least under this prong.  Indeed, the parties agree that prong two does not confer personal jurisdiction over Defendant O'Brien.

### 3. Prong Three

Plaintiff next argues Defendant O'Brien is subject to personal jurisdiction in this Court under the third prong of

9

Georgia's long-arm statute. Dkt. No. 48-1 at 18. This subsection permits the exercise of jurisdiction over a defendant who "[c]ommits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." O.C.G.A. § 9-10-91. Under subsection three, "courts do have jurisdiction over nonresident defendants in defamation cases when there exist requisite minimum contacts other than the commission of the tort itself." Bradlee Mgmt. Servs., Inc. v. Cassells, 292 S.E.2d 717, 720 (Ga. 1982).

Plaintiff alleges that Defendant O'Brien "is an entertainer who has previously worked as an actress and a touring comedian"; she "rose to prominence as a romantic partner and friend of the stars of the popular reality television show 'Vanderpump Rules,' though she does not seem to have appeared on the show in several years"; "[i]n 2020, Ms. O'Brien began publishing the '*Seven Deadly Sinners*' podcast"; "*Seven Deadly Sinners* has approximately 200 episodes"; "[f]rom December 2022 through July 2023, Ms. O'Brien hosted another podcast called '*Deadly Diocese*' about the death of a priest in the Buffalo, New York diocese"; and Defendant O'Brien has appeared as a special guest on several Morbid podcasts. Dkt. No. 1 ¶¶ 45-50, 60-62. In support of her motion to dismiss, Defendant O'Brien states she is "a resident and citizen of the state of Colorado"; she "ha[s] never been a resident of nor citizen

10

of the state of Georgia"; she "ha[s] no offices in Georgia, and never has"; she "do[es] not visit Georgia, nor ha[s she] ever done so except to pass through it on rare occasion"; her "business office is [her] home in Colorado"; she "ha[s] no businesses or business offices anywhere else"; she "ha[s] never owned, used or possessed any real property in Georgia"; and she "ha[s] been in Colorado . . . for two years." Dkt. No. 46-2 ¶¶ 2-3.

### D. Jurisdictional Discovery

Neither Plaintiff nor Defendant O'Brien requested an evidentiary hearing on the motion to dismiss. In his response brief, however, Plaintiff states that should "the Court . . . ha[ve] concerns about exercising jurisdiction over Ms. O'Brien, then [Plaintiff] respectfully requests leave to engage in jurisdictional discovery." Dkt. No. 48-1 at 21.

"The right to jurisdictional discovery is a qualified one, available 'when a court's jurisdiction is genuinely in dispute.'" Wolf v. Celebrity Cruises, Inc., 683 F. App'x 786, 792 (11th Cir. 2017) (quoting Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 730 (11th Cir. 1982)). "The purpose of jurisdictional discovery is to ascertain the truth of the allegations or facts underlying the assertion of personal jurisdiction." Davis v. LG Chem., Ltd., No. 1:19-cv-5234-SDG, No. 1:20-cv-2653-SDG, 2020 WL 5773462, at *5 (N.D. Ga. Sept. 28, 2020) (quoting Atlantis Hydroponics, Inc. v. Int'l Growers Supply, Inc., 915 F. Supp. 2d 1365, 1380 (N.D. Ga. 2013)).

Plaintiff's request for jurisdictional discovery within his response brief is procedurally improper. Posner v. Essex Ins. Co., 178 F.3d 1209, 1222 (11th Cir. 1999) ("Where a request for [affirmative relief] simply is imbedded within an opposition memorandum, the issue has not been raised properly."). Nevertheless, construing the uncontroverted allegations in the complaint as true and drawing all reasonable inferences in favor of Plaintiff, the Court finds that there is a genuine dispute as to whether exercising personal jurisdiction over Defendant O'Brien under prongs one and three of Georgia's long-arm statute would be appropriate. Accordingly, the Court **GRANTS** jurisdictional discovery.[1]

There is a genuine dispute regarding whether Defendant O'Brien has transacted business in Georgia through publishing the subject podcast, and jurisdictional discovery should reveal the extent of O'Brien's involvement in publishing and disseminating the podcast. Additionally, jurisdictional discovery is proper here to determine the extent of O'Brien's course of conduct in the state, including whether she solicits business from Georgia and derives substantial revenue from her podcast in Georgia.

For the foregoing reasons, Defendant O'Brien's motion to dismiss, dkt. no. 46, is **DENIED without prejudice**. The parties

---

[1] Because the Court is granting jurisdictional discovery to determine whether exercising personal jurisdiction under the long-arm statute is appropriate, it presently need not decide whether exercising personal jurisdiction would comport with due process.

may conduct jurisdictional discovery for a period of sixty days from the date of this Order. Defendant O'Brien shall respond to all written discovery requests within fourteen days. Additionally, O'Brien shall have twenty-one days from the close of the jurisdictional discovery period to file dispositive motion(s), if any.

## II. Plaintiff's Motion for Entry of Default

Because jurisdictional discovery is necessary to determine whether the Court has personal jurisdiction over Defendant O'Brien, it would be premature for the Court to discuss the merits of Plaintiff's motion for entry of default at this juncture. See Warren v. Hilton, No. 2:13-cv-84, 2013 WL 3974479, at *2 (S.D. Ala. Aug. 1, 2013) ("[A] default judgment would be invalid and ineffective unless the Court has personal jurisdiction over the defendant."). Accordingly, the Court defers ruling on Plaintiff's motion for entry of default, dkt. no. 38, until the completion of jurisdictional discovery and resolution of any dispositive motions.

## CONCLUSION

Defendant O'Brien's motion to dismiss for lack of personal jurisdiction, dkt. no. 46, is **DENIED without prejudice** at this time. The parties may conduct jurisdictional discovery for a period of sixty days from the date of this Order. Defendant O'Brien shall respond to all written discovery requests within fourteen days. Additionally, O'Brien shall have twenty-one days

from the close of the jurisdictional discovery period to file dispositive motion(s), if any. The Court defers ruling on Plaintiff's motion for entry of default, dkt. no. 38, at this time. This case is **STAYED** until further Order of the Court.

**SO ORDERED,** this 14th day of January, 2025.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA