# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

|  |  |
|---|---|
| DR. MAHENDRA AMIN, M.D.,<br><br>    Plaintiff,<br><br>    v.<br><br>RACHAEL O'BRIEN; MORBID: A TRUE CRIME PODCAST LLC d/b/a Morbid Network; WONDERY, LLC; and AMAZON.COM, INC.,<br><br>    Defendants. | CV 5:24-022 |

## ORDER

Before the Court is a motion to dismiss filed by Defendants Wondery, LLC and Amazon.com, Inc., dkt. no. 24, as well as a motion to dismiss filed by Morbid: A True Crime Podcast LLC, dkt. no. 20. The motions have been fully briefed and are ripe for review. Dkt. Nos. 42, 43, 51, 54.

## BACKGROUND[1]

This civil action arises from alleged defamatory statements made during a podcast. The following facts are taken from Plaintiff's complaint.

Plaintiff is the only obstetrician gynecologist physician in rural Irwin County, Georgia. Dkt. No. 1 ¶¶ 32. In addition to

---

[1] At this stage, the Court must "accept all factual allegations in a complaint as true[,] and take them in the light most favorable to [the] plaintiff[.]" Dusek v. JPMorgan Chase & Co., 832 F.3d 1243, 1246 (11th Cir. 2016).

treating patients at his office, he also treated patients detained by United States Immigration Customs Enforcement ("ICE") at the Irwin County Detention Center ("ICDC").  Id. ¶ 2.  Around September 2020, the media began reporting allegations—brought by "whistleblower" Dawn Wooten and an advocacy organization that sought to abolish ICE and close down ICDC—that women detained by ICE at ICDC had been subjected by Plaintiff to high numbers of hysterectomies without informed consent.  Id. ¶ 3.

According to the complaint, the allegations were "discredited almost immediately."  Id. ¶ 4.  However, on April 16, 2023, several months after the U.S. Senate and various media outlets found the allegations false, Defendants published a podcast entitled, *Seven Deadly Sinners*, Episode 142:  *The Uterus Collector*.  Id. ¶¶ 5, 6, 97.  The complaint alleges that the episode falsely accuses Plaintiff of being an abusive physician who performed mass hysterectomies and sterilization on women detained by ICE at ICDC.  Id. ¶ 7.  According to the complaint, the statements made during the podcast contradicted the factual evidence and attacked Plaintiff's character, accusing him of crimes and damaging his reputation as a physician.  Id. ¶ 8.

Plaintiff initiated this defamation action on March 27, 2024 against Defendant Rachael O'Brien, who hosts *Seven Deadly Sinners* and its offending podcast episode; Morbid: A True Crime Podcast LLC ("Morbid"), a podcast network of thirteen podcast series, including *Seven Deadly Sinners*; Wondery, LLC, a podcast network

2

and publishing company which publishes Morbid; and Amazon.com, Inc., which owns Wondery. Id. ¶¶ 11-13, 55, 63. Amazon and Wondery, collectively, have moved to dismiss Plaintiff's defamation claim for failure to state a claim for which relief can be granted. Dkt. No. 24. Morbid, separately, has moved to dismiss Plaintiff's complaint for lack of personal jurisdiction. Dkt. No. 20. The Court addresses the motions in turn.

## DISCUSSION

### I. Amazon and Wondery's Motion to Dismiss

Amazon and Wondery ("Defendants") move to dismiss Plaintiff's complaint for failure to state a claim for which relief can be granted, pursuant to Rule 12(b)(6). Dkt. No. 24.

#### A. Background

In the complaint, Plaintiff alleges the following relevant facts. "On April 16, 2023, Ms. O'Brien, Morbid LLC, Wondery, and Amazon published *Seven Deadly Sinners*, Episode 142." Dkt. No. 1 ¶ 97. During the podcast, O'Brien made several allegedly defamatory statements about Plaintiff. See, e.g., id. ¶¶ 103-13. The podcast episode "was exclusively available on Wondery and Amazon for one week." Id. ¶ 98.

"Wondery is one of the largest podcast networks[2] in the country and is consistently ranked in the top 3 by industry

---

[2] In the complaint, Plaintiff states "[t]here is no single definition of the term, but a podcast network is generally a company or entity that produces or distributes multiple podcasts through the single umbrella entity. As a business relationship

analysts." Id. ¶ 64. "Wondery touts its 'specialized marketing capabilities,' 'in-house monetization solutions,' and 'strong relationships with key distribution partners' as benefits to creators or other podcast networks considering paying for its services." Id. ¶ 66.

Amazon is a global technology and media conglomerate. Id. ¶¶ 13, 68. "In 2020, Amazon, as Amazon Music, agreed to purchase Wondery for a reported $300 million." Id. ¶ 69. "Amazon and Wondery have an exclusive deal with Morbid Network," which includes *Seven Deadly Sinners* and the offending podcast. Id. ¶¶ 11, 73. "Pursuant to this deal, Amazon and Wondery have exclusive rights to Morbid Network's ad sales, merchandising, and distribution." Id. "Amazon and Wondery also have a 'windowing deal,' meaning there is a 'window' during which new Morbid Network context is available exclusively through Wondery and Amazon before it is available on the broader podcast market." Id. "[C]reators or networks must either be approached by Wondery and Amazon or must apply to Wondery and Amazon to become part of their network." Id. ¶ 77.

"*Seven Deadly Sinners* is identified as under the 'Morbid' umbrella on its own home page on Wondery.com and also on the Morbid Network's homepage on Wondery.com." Id. ¶ 57. "Wondery and Amazon

---

with podcast creators, the network offers production support and guidance, audience metrics, and advertising and marketing services, typically in exchange for a portion of a podcast's revenue or ad sales." Dkt. No. 1 ¶ 53.

4

are the online home of the Morbid Network and *Seven Deadly Sinners*." Id. ¶ 76. "Morbid Network merchandise is available through Wondery.com." Id. ¶ 75. "To date," "the podcast episode and its description remain available to the public on Wondery.com, Amazon Music, and on other podcast-hosting platforms, including Apple Music and Spotify." Id. ¶ 177.

### B. Legal Authority

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the well pleaded allegations of the complaint as true and views them in the light most favorable to the non-moving party. Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1356 (11th Cir. 1998). "A complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) (citing Conley v. Gibson, 355 U.S. 41, 45–46 (1957)); see also Horsley v. Rivera, 292 F.3d 695, 700 (11th Cir. 2002) ("If upon reviewing the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint."). The Court should not accept allegations as true if they merely recite the elements of the claim and declare that they are met; legal conclusions are not entitled to a presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

So viewed, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)). Ultimately, if "the well-pleaded facts do not permit the court to infer more than the mere *possibility* of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (emphasis added) (quoting Fed. R. Civ. Proc. 8(a)(2)).

### C. Discussion

In their motion to dismiss for failure to state a claim, Amazon and Wondery argue 1) the alleged defamatory statements are subject to Georgia's "public interest" privilege; 2) with respect to Amazon, its mere ownership of Wondery is an insufficient basis for liability; and 3) the Communications Decency Act provides both Amazon and Wondery with absolute immunity in this case. Dkt. No. 24 at 2-3.

#### i. Public Interest Privilege

Amazon and Wondery argue "the statements Plaintiff alleges defamed him are subject to Georgia's 'public interest' privilege because they were made in connection with an issue of public interest or concern, and Wondery's alleged distribution of the

6

statements were acts in furtherance of their and the public's constitutional rights of free speech." Dkt. No. 24 at 2.

For purposes of the motion to dismiss, the Court will assume Defendants are correct and the public interest privilege applies to the facts of this case. "Where a conditional privilege applies, the privilege protects the speaker from liability for the communication unless the communication is made with actual malice." Amin v. NBCUniversal Media, LLC, No. 5:21-cv-56, 2022 WL 16964770, at *8 (S.D. Ga. Nov. 16, 2022) (citing McCraken v. Gainesville Trib., Inc., 246 S.E.2d 360, 362 (Ga. Ct. App. 1978)). "'Actual malice' means the speaker '[knew] that [a statement] was false or [made the statement] with reckless disregard of whether it was false or not.'" Id. at *9 (quoting Michel v. NYP Holdings, Inc., 816 F.3d 686, 702 (11th Cir. 2016)). "Malice 'is generally a jury issue,' but courts may dismiss defamation suits for failure to state a claim 'where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice.'" Id. (internal citations omitted) (first quoting Hammer v. Slater, 20 F.3d 1137, 1142 (11th Cir. 1994), then quoting Michel, 816 F.3d at 702).

Taking all inferences in favor of Plaintiff, the Court finds Plaintiff has sufficiently pled malice on the part of Amazon and Wondery. For example, Plaintiff alleges in the complaint: "The description of the Episode, posted on Seven Deadly Sinner's homepage on Wondery.com, is: 'This one is so diabolical I almost

7

didn't believe it myself until I started researching. And researching. And finding dozens upon dozens of articles and videos from all over the world describing the evil sins this man committed to the bodies of women without their consent—and sometimes without their verbal understanding. And trigger warning—this episode will deal with descriptions of unfathomable gynecological abuse.'" Dkt. No. 1 ¶ 100. Taking Plaintiff's allegations as true, as the Court must do at this stage, Plaintiff has sufficiently alleged that Defendants acted with malice. This description was posted on Wondery.com. The description indicates that the subject discussed in the episode was thoroughly researched. One could infer that such research would have revealed the entire story of gynecological abuse by Plaintiff had already been debunked *before* Defendants collectively published the podcast. It is therefore possible that Amazon and Wondery *knew* that the statements made in the podcast were false, yet they made them anyway. Accordingly, the public interest privilege does not bar Plaintiff's defamation claim against Amazon and Wondery at this stage.

### ii.  Amazon's Ownership of Wondery

Next, with regard to Plaintiff's allegations against Amazon, in particular, Defendants argue, "Amazon's mere ownership of Wondery is an insufficient basis for liability against Amazon." Dkt. No. 24 at 3. Defendants, however, overlook that, in the complaint, Plaintiff treats Wondery and Amazon as one and the same. See generally Dkt. No. 1; id. ¶ 71 (Plaintiff alleging that Amazon

8

Music purchased Wondery, and "Amazon Music seems to be in essence a d/b/a or trade name of Amazon.com, Inc."). In other words, Plaintiff alleges that Amazon and Wondery ignore corporate formalities and, therefore, Amazon and Wondery are equally liable to Plaintiff for the alleged defamation. Defendants have made no argument and cited no legal authority to challenge these allegations.

### iii. Communications Decency Act Immunity

Finally, Amazon and Wondery argue the Communications Decency Act ("CDA"), 47 U.S.C. § 230, provides immunity against Plaintiff's defamation claim. The Eleventh Circuit has "recognized that '[t]he majority of federal circuits have interpreted the CDA to establish broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" McCall v. Zotos, No. 22-11725, 2023 WL 3946827, at *2 (11th Cir. June 12, 2023) (quoting Almeida v. Amazon, 456 F.3d 1316, 1321 (11th Cir. 2006)). "Generally speaking, [47 U.S.C.] § 230 'precludes courts from entertaining claims that would place a computer service provider in a publisher's role.'" Id. (quoting Zeran v. Am. Online, Inc., 129 F.3d 327, 330 (4th Cir. 2008)). Importantly, though, if a plaintiff's "claim is based on content that the interactive computer service developed, even if only in part, then the service could be held liable." Id. (citing FTC v. LeakClick Media, LLC, 838 F.3d 158, 174 (2d Cir. 2016)).

9

To show that Amazon and Wondery are responsible for the content of the podcast, at least in part, Plaintiff argues that Amazon and Wondery "offer services included [sic] 'develop[ment] and grow[th]' to podcast creators." Dkt. No. 43 at 4 (citing Wondery's website). However, Plaintiff's complaint does not contain such an allegation. This is problematic for Plaintiff as he attempts to ward off Amazon and Wondery's CDA immunity defense.

### iv. Opportunity to Amend

In his brief, Plaintiff requests that he be allowed to amend the complaint should the Court find "shortcomings" therein. Dkt. No. 43 at 19. Plaintiff's request to amend his complaint is procedurally improper. Posner v. Essex Ins. Co., 178 F.3d 1209, 1222 (11th Cir. 1999) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."). Nevertheless, "[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." Bank v. Pitt, 928 F.2d 1108, 1112 (11th Cir. 1991) (per curiam). Accordingly, Plaintiff is **GRANTED** leave to amend the complaint, and Amazon and Wondery's motion to dismiss, dkt. no. 24, is **DENIED** at this time.

### II. Morbid's Motion to Dismiss

Defendant Morbid moves to dismiss Plaintiff's complaint for lack of personal jurisdiction. Dkt. No. 42.

10

### A. Background

Plaintiff alleges the following relevant facts in the complaint. Morbid is a Massachusetts limited liability company. Dkt. No. 1 ¶ 11. Morbid is a podcast network, which includes *Seven Deadly Sinners*. Id. Morbid is, in turn, published by Wondery. Id. ¶¶ 12, 49. Morbid entered into an exclusive distribution and merchandising agreement with Amazon and Wondery. Id. ¶ 67. That is, Amazon and Wondery have exclusive rights to Morbid's ad sales, merchandising, and distribution. Id. ¶ 73. Morbid merchandise is available only through Wondery.com, which hosts the official web pages for Morbid podcasts. Id. ¶¶ 74, 75. Amazon and Wondery also have a "windowing deal," meaning there is a window during which Morbid's content is available exclusively through Amazon and Wondery before it is available on the broader podcast market. Id. ¶ 73.

The first words heard in episodes of *Seven Deadly Sinners* are, "You're listening to a Morbid Network Podcast." Id. ¶ 58. Morbid and *Seven Deadly Sinners* have Instagram pages. Id. ¶ 74. *Seven Deadly Sinners*' thumbnail image includes Morbid's trademarked logo. Id. ¶ 56. Defendants—Rachel O'Brien, Amazon, Wondery and Morbid—published the podcast episode about Plaintiff on April 16, 2023. Id. ¶ 97.

### B. Legal Authority

"In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff

11

bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant." Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988). This standard is satisfied "if the plaintiff presents enough evidence to withstand a motion for directed verdict." Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990). A party presents enough evidence to withstand a motion for directed verdict by putting forth "substantial evidence . . . of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions . . . ." Walker v. NationsBank of Fla. N.A., 53 F.3d 1548, 1555 (11th Cir. 1995). In making this determination, the Court must construe the allegations in the complaint as true to the extent they are not controverted by the defendant's affidavits, and the facts must be viewed in the light most favorable to the plaintiff. See Morris, 843 F.2d at 492.

### C. Discussion

#### i. Personal Jurisdiction

The analysis of personal jurisdiction involves a two-step process: (1) determine whether Georgia's long-arm statute authorizes the exercise of personal jurisdiction over the defendant, and (2) determine whether the exercise of personal jurisdiction is consistent "with the Due Process requirements of the federal Constitution." Murphy v. Aventis Pasteur, Inc., 270 F. Supp. 2d 1368, 1378 (N.D. Ga. 2003).

Georgia's long-arm statute provides, in pertinent part, that a court may exercise personal jurisdiction over a nonresident who, in person or through an agent:

> (1) Transacts any business within this state;
>
> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]

O.C.G.A. § 9-10-91(1)-(3). The long-arm statute requires "that an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction." Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank, 620 S.E.2d 352, 353 (Ga. 2005) (citation omitted). The Court is to construe the "statute literally and give full effect to the breadth of its language." Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1264 (11th Cir. 2010).

Plaintiff argues jurisdiction over Morbid is proper under the first and third prongs of Georgia's long-arm statute. Dkt. No. 42-1 at 7. Specifically, Plaintiff alleges *all* Defendants "publish[] podcasts that are available to Georgia listeners" and "solicit[] and obtain[] subscribers through an interactive web site available in Georgia." Dkt. No. 1 ¶ 22. Plaintiff further

alleges "Defendants have a substantial community of listeners and subscribers, including paying subscribers, in Georgia." Id. ¶ 23.

Plaintiff states his defamation claim "arose from the Defendant's joint business activities related to one publication." Dkt. No. 42-1 at 10. Further, Plaintiff argues Morbid "may not distance itself from its indirect acts by arguing they were performed by, for example, an independent contractor." Id. at 8 (citing Am. Coll. Connection, Inc. v. Berkowitz, 775 S.E.2d 226, 230 (Ga. Ct. App. 2015) (noting that the "through an agent" language of Georgia's long-arm statute is not restricted to a respondeat superior analysis of principal/agent liability)). Specifically, Plaintiff points to Morbid's website on Wondery.com, where podcasts are available to stream and users are encouraged to create accounts, pay for subscriptions and buy merchandise. Dkt. No. 42-1 at 12, 13.

In its motion and attached declaration,[3] Morbid argues it does not transact any business in Georgia and does not regularly do or solicit business in, or derive any revenue from, Georgia. Dkt. No. 20-1 at 8, 12. Specifically, Morbid argues it has not entered into any contracts with any Georgia residents; it does not maintain any offices or agents in Georgia; it has never engaged in negotiations within Georgia or with any Georgia residents or

---

[3] Notably, Plaintiff challenges the declaration, stating it "contains only legal conclusions and attempts to foist Morbid's internet activity onto other Defendants." Dkt. No. 42-1 at 9.

corporations; it does not receive revenue directly from any podcast listeners in Georgia or otherwise, as all revenue it receives comes from Wondery; Wondery holds the exclusive right to sell ad slots on Morbid's podcasts; and Morbid does not sell ads to Georgia businesses or otherwise. Id. at 9. With regard to its web page, which is hosted by Wondery, Morbid argues its "actions are too far removed to confer jurisdiction" because the web page "is of the utmost passivity" and "effectively does nothing beyond making the podcast available to those who are interested in it." Id. at 11-12. Further, Morbid challenges Plaintiff's jurisdictional allegations, stating that Plaintiff lumps the four Defendants together rather than specifying each Defendant's contacts with Georgia. Id. at 9.

### ii.  Jurisdictional Discovery

Neither Plaintiff nor Morbid requested an evidentiary hearing on the motion to dismiss. In his response brief, however, Plaintiff states that should "the Court . . . ha[ve] concerns about exercising jurisdiction over Morbid, then [Plaintiff] respectfully requests leave to engage in jurisdictional discovery." Dkt. No. 42-1 at 20.

"The right to jurisdictional discovery is a qualified one, available 'when a court's jurisdiction is genuinely in dispute.'" Wolf v. Celebrity Cruises, Inc., 683 F. App'x 786, 792 (11th Cir. 2017) (quoting Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 730 (11th Cir. 1982)). "The purpose of jurisdictional discovery is to

15

ascertain the truth of the allegations or facts underlying the assertion of personal jurisdiction." Davis v. LG Chem., Ltd., Nos. 1:19-cv-5234-SDG, 1:20-cv-2653-SDG, 2020 WL 5773462, at *5 (N.D. Ga. Sept. 28, 2020) (quoting Atlantis Hydroponics, Inc. v. Int'l Growers Supply, Inc., 915 F. Supp. 2d 1365, 1380 (N.D. Ga. 2013)).

Plaintiff's request for jurisdictional discovery within his response brief is procedurally improper. Posner v. Essex Ins. Co., 178 F.3d 1209, 1222 (11th Cir. 1999) ("Where a request for [affirmative relief] simply is imbedded within an opposition memorandum, the issue has not been raised properly."). Nevertheless, construing the uncontroverted allegations in the complaint as true and drawing all reasonable inferences in favor of Plaintiff, the Court finds that there is a genuine dispute as to whether exercising personal jurisdiction over Morbid under prongs one and three of Georgia's long-arm statute would be appropriate. Accordingly, the Court **GRANTS** jurisdictional discovery.[4]

There is a genuine dispute regarding whether Morbid has transacted business in Georgia through publishing the subject podcast, and jurisdictional discovery should reveal the extent of Morbid's involvement in publishing and disseminating the podcast.

---

[4] Because the Court is granting jurisdictional discovery to determine whether exercising personal jurisdiction under the long-arm statute is appropriate, it presently need not decide whether exercising personal jurisdiction would comport with due process.

16

Additionally, jurisdictional discovery is proper here to determine the extent of Morbid's course of conduct in the state, including whether it solicits business from Georgia and derives substantial revenue from podcast listeners in Georgia.

## CONCLUSION

Defendant Morbid's motion to dismiss, dkt. no. 20, is **DENIED without prejudice.**  The parties may conduct jurisdictional discovery for a period of sixty days from the date of this Order. Morbid shall respond to all written discovery requests within fourteen days.

Defendants Amazon and Wondery's motion to dismiss, dkt. no. 24, is also **DENIED without prejudice.**  Plaintiff is **ORDERED** to file an amended complaint within thirty days of the close of jurisdictional discovery discussed *supra*.

Should Defendants wish to renew their dispositive motions, they may do so within twenty-one days after Plaintiff files an amended complaint.

**SO ORDERED**, this 8th day of April, 2025.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA